432 A.2d 621

**In re Wesley HALL, a Minor.**

**Appeal of John F. HALL, Natural Father.**

Superior Court of Pennsylvania.

Argued April 14, 1981.

Filed July 17, 1981.

496

Eileen D. Yacknin, Pittsburgh, for appellant.

Mark S. Drier, Pittsburgh, for Wesley Hall, appellee.

James Esler, Assistant County Solicitor, Pittsburgh, for Children Services, participating party.

Vincent DeFalice, Pittsburgh, for McHale, participating party.

Before CAVANAUGH, JOHNSON and SHERTZ, JJ.

SHERTZ, Judge:

This is an appeal from an order authorizing the transfer of Wesley Hall, a nine-year-old boy, from the Home for Crippled Children ("HCC") in Pittsburgh to the Sarah Reed Children's Home ("Sarah Reed") in Erie, Pennsylvania. Appellant, John F. Hall, is Wesley's natural father, and Appellee Nancy McHale, who has joined Appellant's Brief, is Wesley's natural mother. They contend that the hearing judge erred (1) by failing to afford them a meaningful opportunity to participate in the planning for Wesley's transfer; and (2) by disregarding less restrictive alternative placements for Wesley. We disagree and affirm.

Wesley is a deeply disturbed, multi-problem child.[1] He has been under the supervision of the Children and Youth

1. In January 1979, Wesley, who had been in foster care, was removed from his foster family placement and admitted to the Western Psychiatric Institute and Clinic ("WPIC") for treatment and evaluation. At that time, the chief resident of WPIC determined that Wesley's problems stemmed from "a nonpsychotic organic brain syndrome," which caused "deficits in growth and fine motor coordination and cognitive thinking ..." and difficulties relating with people. Wesley was also diagnosed as suffering from a petit mal seizure disorder.

Services ("CYS") by court order since May, 1973. In July, 1973, Wesley and his brother were found to be dependent and removed from their parents' home. Since that time, Wesley had had 18 placements, including foster homes, his own home, WPIC, HCC and Sarah Reed.

Wesley was placed at HCC, a very intensive treatment center that handles disabled, brain damaged and emotionally disturbed children, in May, 1979. Approximately one year after his placement at HCC, Wesley was considered ready for discharge,[2] and the clinical staff at HCC began to consider options available for Wesley's future placement and continued treatment.[3] Several alternatives, including specialized foster family care, placement at the Holy Family Institute, or Bradley Center, both located in Allegheny County, or at Sarah Reed, were considered at that time. In May, 1980, a second planning conference was held and possible placements for Wesley were again discussed. It was attended by a representative of CYS, a representative of HCC, and a representative of Allegheny County Mental Health/Mental Retardation.

CYS was then formally notified by HCC in June, 1980, that Wesley was ready for discharge from HCC. CYS, in turn, made referrals to Sarah Reed, Holy Family Institute, and Bradley Center, based on the recommendations of the HCC staffing conference and the subsequent planning conference.[4] Sarah Reed was considered the optimal placement for Wesley for several reasons. Sarah Reed has a program of behavior shaping and psychiatric orientation, its program

2. HCC is a facility designed to provide short-term intensive care. When a child is ready for less intensive treatment, he is discharged from HCC.

3. Wesley's change in placement was first discussed in an HCC staffing meeting on April 1, 1980. The staffing was attended by Wesley's teacher, social worker, speech therapist, physician and occupational therapist.

4. Specialized foster family care was ruled out for two reasons. First, CYS determined that such specialized care was not presently available; and, second, it was determined that Wesley needed stability and would do best in a treatment setting preferably in a facility capable of providing long term care if necessary.

has several steps (initially a residential program, then a group home program), it has an excellent record, and it is able to accommodate Wesley until he reaches 18. While Holy Family Institute and Bradley Center were also seen as placement options, the CYS representative testified that their programs were less comprehensive than Sarah Reed's.

In response to the referrals made by CYS, Sarah Reed indicated that it had an immediate opening for Wesley, while both Holy Family Institute and Bradley Center indicated that they had waiting lists and would, therefore, be unable to accept Wesley until September or October 1980, at the earliest. Because of the superior treatment available at Sarah Reed, because Sarah Reed's acceptance of Wesley was both immediate and definite, and because Wesley's preplacement visit at Sarah Reed went well, CYS made the determination that Wesley should be transferred there, and a placement date of July 9, 1980 was set.

On June 27, 1980, CYS notified Wesley's parents of its intention to transfer Wesley to Sarah Reed and of the court hearing that would be held on July 9, 1980, to approve the transfer. At the July 9, 1980 hearing, counsel for Appellant moved the court to dismiss, or to remove the proceeding to the Department of Public Welfare ("DPW") Office of Hearings and Appeals, on the ground that the proceedings were governed by DPW's regulations governing Foster Family Care Service for Children, Title 55, Chapter 11, Section 31, § 2–31–1 et seq. (eff. 7/1/80). 10 Pa.Bull. 1046 (March 15, 1980).[5] The lower court concluded that the regulations in question did not apply to the instant case and denied the motion. Testimony was then taken from a representative of HCC and a representative of CYS. Both witnesses testified that although foster care had been considered for Wesley, it had been determined that it was necessary that Wesley continue in residential care. There was also extensive testimony detailing the reasons that Sarah Reed was considered to be the facility best able to serve Wesley's needs.

5. These regulations set forth, inter alia, the notice and hearing requirements that must be complied with when a child is being placed in foster care.

At the conclusion of the July 9, 1980 hearing, the lower court granted a nine-day continuance because it concluded that Wesley's parents must have an opportunity to present evidence regarding alternative placements for their son and that the June 27, 1980 notice from CYS had been insufficient to allow them adequate time to prepare their case. A second hearing was therefore held on July 18, 1980.

At the second hearing, counsel for Appellant presented the testimony of Mr. Conrad Kammerer, of the Center for the Assessment and Treatment of Youth ("CATY"), a specialized foster care program in Allegheny County. Mr. Kammerer, in his capacity as placement coordinator for CATY, testified that he would consider Wesley for evaluation and would then determine whether Wesley was an appropriate candidate for CATY.[6] Mr. Kammerer further testified that, based on the information about Wesley that he had seen, he could state that CATY had entertained referrals of youngsters with similar backgrounds. He also indicated that CATY would consider Wesley for evaluation, but that he did not know whether Wesley would ultimately be accepted or considered for placement.

After Mr. Kammerer testified, Appellant, asserting that the first nine-day continuance was insufficient, requested a second continuance to permit referrals to be made to CATY, and/or to give Holy Family Institute or Bradley Center an opportunity to accept Wesley into their program.[7] The lower court denied the request and approved Wesley's transfer from HCC to Sarah Reed. This appeal followed.

6. Specifically, Mr. Kammerer stated that CATY receives referrals from CYS. CATY then reviews the information on the youngster and makes an initial determination whether to see the youngster for a personal evaluation. If an evaluation is deemed to be appropriate, the CATY psychologist then sees the youngster. If the child is still considered appropriate for CATY placement, he is either placed immediately if there is a family available or he is placed on a waiting list. The evaluation or acceptance process can take anywhere from a week and a half to two weeks.

7. Wesley's parents were primarily concerned with the fact that Sarah Reed is 120 miles from Pittsburgh. The distance, they asserted, would greatly hinder their ability to visit Wesley.

Wesley's parents now present two arguments. First, they assert that they were denied a meaningful opportunity to participate in Wesley's transfer to Sarah Reed. In that regard, they maintain that the DPW Foster Family Care Service regulations required that they be notified of, and permitted to participate in, the planning for the modification of their son's placement. They also assert that the nine-day continuance granted by the hearing judge was inadequate and that his refusal to grant a second continuance constituted an abuse of discretion. Second, they assert that the lower court erred in approving Wesley's transfer to Sarah Reed when they were suitable facilities available in Allegheny County. Specifically, they contend that because CYS failed to meet its burden of proving that Wesley's transfer to Sarah Reed was necessary, it was error to disregard less restrictive alternative placement that would have kept Wesley closer to his natural family.

■ Turning to the first contention, we conclude that the Foster Family Service Regulations do *not* apply to instances where a child is being transferred from one *residential care facility* to another. As Appellant notes, an important goal of the regulations is to establish procedures whereby parents and children participate in the decision making regarding the plans for the child's care. We are, however, unable to accept Appellant's strained interpretation of the applicability of these regulations. The introduction to the regulations states that "(t)he new regulations shall apply to any social service agency . . . which directly approves and supervises foster families and places . . . children in the physical care of such foster families for a limited time period." 10 Pa. Bull. at 1046. Appellant suggests that "(t)he term 'foster family care' as used in these Regulations can only logically be deemed to be an all-inclusive phrase, intended to encompass all the varied types of out-of-home placement care programs offered and provided to minor children, who, for whatever reasons, are unable to remain within the homes of their natural parent." Appellant's Brief at 16.

We believe it would be desirable for the notice and hearing requirements to be made applicable to factual situations such as are here present, and we invite the legislature or DPW to do so, but we are constrained to apply the regulations as they are presently written. Under the regulations, a foster parent is "a person 21 years of age or older certified by an agency to provide a temporary family home to children who must be removed from their parent." Reg. 2–31–17, 10 Pa.Bull. at 1048. While "foster family" is not specifically defined, its intended meaning can be discerned from a reading of the regulations. For instance, Reg. 2–31–80, dealing with the screening of potential foster families, begins with the phrase "All couples or individuals interested in being an approved foster family . . . ." 10 Pa.Bull. at 1051. We are, therefore, convinced that the regulations apply only to situations in which a child is being placed in foster care with an individual or couple rather than, as Appellant suggests, in a residential care facility such as Sarah Reed.

■ Having determined that the DPW regulations do not apply in the instant case, we turn now to the contention that the lower court abused its discretion by granting one nine-day continuance and by refusing to grant a second continuance. Preliminarily, it is well-settled that a lower court's grant or denial of a continuance will not be overturned on appeal absent a manifest abuse of discretion. *Krull v. Krull*, 236 Pa.Super. 207, 208–11, 344 A.2d 619, 620 (1975). We find none here. The lower court acknowledged that Wesley's parents should have had adequate notice of the hearing and, therefore, time to prepare their case. It is for that reason that the nine-day continuance was granted. We believe that this continuance was sufficient to comport with notions of fundamental fairness and due process.

Because Wesley had previously been adjudicated dependent in 1973, the hearing, which is the subject of this appeal, was a dispositional hearing. *See In re Jones*, 286 Pa.Super. 574, 577 n.2, 429 A.2d 671, 673 n.2 (1981). It has recently been held that parents in a dispositional hearing have a right to confront and cross-examine witnesses. *Id.* at 673; *see also*

42 Pa.Cons.Stat.Ann. § 6341(d) (Purdon 1981). The lower court adequately conformed with the mandates of due process since Wesley's parents were afforded an opportunity to confront and cross-examine witnesses. Further, any defect that may have existed in providing them with adequate notice of the hearing was cured by the continuance granted by the lower court. Therefore, Appellant's contention that the hearing judge abused his discretion is without merit.

Appellant finally argues that the lower court erred in approving Wesley's transfer to Sarah Reed because CYS failed to prove that the transfer was necessary. Again, we find Appellant's contention to be unpersuasive.

In cases of this nature, the hearing judge must provide us with a comprehensive opinion that is supported by the evidence and the law. *In re Black*, 273 Pa.Super. 536, 543, 417 A.2d 1178, 1182 (1980). Moreover, the evidence must establish that the transfer is necessary.[8] *In re Pernishek*, 268 Pa.Super. 447, 457–60, 408 A.2d 872, 877–78 (1979).

We are satisfied that both requirements have been met in the instant case. There is ample evidence in the record to support the conclusion that Wesley's placement at Sarah Reed was necessary.[9] Uncontradicted testimony established that Sarah Reed was the only facility that had an immediate opening for Wesley and that it was the facility best able to serve Wesley's needs. Further, the less restrictive alternative of foster care suggested by Appellant was found to be unsuitable for Wesley at the present time. We, therefore, find that CYS met its burden of proving that Wesley's transfer to Sarah Reed was necessary and accordingly, that the lower court did not err in approving the transfer.

Order affirmed.

8. At a dependency hearing, the required proof must be clear and convincing. Because the instant hearing was dispositional, however, the burden of proof is lessened. *In re Jones*, 286 Pa.Super. 574, 429 A.2d 671, 673 (1981), *citing Stapleton v. Dauphin County Child Care Services*, 228 Pa.Super. 371, 387, 324 A.2d 562, 571 (1974).

9. The record is sufficiently complete for us to conclude that Wesley's transfer was necessary although the lower court opinion does not expressly address this issue.