483 A.2d 509

Helen M. WALASAVAGE, Administratrix of the Estate of Francis R. Walasavage, Appellant,

v.

Tony MARINELLI and Joseph Marinelli, d/b/a City Welding and Manufacturing Company, a/k/a City Welding,

v.

George McCLYMONDS, Mark McClymonds, Frank A. Weber, The Chester Engineers, Inc., Robinson Service and Equipment Company, Inc., Marona Construction Company, MGM Spring Brakes, Inc.

v.

ROBINSON SERVICE & EQUIPMENT, INC.

Helen M. WALASAVAGE, Administratrix of the Estate of Francis R. Walasavage

v.

Tony MARINELLI and Joseph Marinelli, d/b/a City Welding and Manufacturing Company, a/k/a City Welding

v.

George McCLYMONDS, Mark McClymonds, Frank A. Weber, The Chester Engineers, Inc. Robinson Service and Equipment Company, Inc., Marona Construction Company, MGM Spring Brakes, Inc.

v.

ROBINSON SERVICE & EQUIPMENT, INC., Appellant.

Helen M. WALASAVAGE, Administratrix of the Est. of Francis R. Walasavage

v.

CITY WELDING AND MANUFACTURING COMPANY, INC., Appellant,

v.

George McCLYMONDS, Mark McClymonds, Frank A. Weber, The Chester Engineers, Inc., Robinson Service and Equipment

Company, Inc., Marona Construction Company, MGM Spring Brakes, Inc.

v.

ROBINSON SERVICE & EQUIPMENT INC., Tony Marinelli and Joseph Marinelli.

Superior Court of Pennsylvania.

Argued March 1, 1984.

Filed Sept. 21, 1984.

Reargument Denied Nov. 27, 1984.

398

400

402

Lee C. McCandless, Butler, for Robinson, appellant (at No. 874) and appellee (at Nos. 985 and 1062).

Thomas B. Rutter, Philadelphia, for Walasavage, appellant (at No. 985) and appellee (at Nos. 874 and 1062).

Richard Audino, New Castle, for City Welding, appellant (at No. 1062) and appellee (at Nos. 874 and 985).

Before BROSKY, DEL SOLE and MONTGOMERY, JJ.

MONTGOMERY, Judge:

On August 25, 1978, Francis R. Walasavage was working beside a chute at the rear of a triaxle dump truck which was owned by George McClymonds, and was being operated by Mark McClymonds. Mr. Walasavage was controlling the flow of hot asphalt from the truck bed, through the chute, and into a sewer trench when the entire tailgate of the truck suddenly opened, burying him in hot asphalt. He lost

his life as a result of the injuries he received. The truck's tailgate assembly was manufactured by City Welding & Manufacturing Company (hereinafter referred to as "City Welding"). The dump truck had been sold to George McClymonds by Robinson Service & Equipment, Inc. (hereinafter referred to as "Robinson").

Subsequently, Helen M. Walasavage, widow of Francis, and Administratrix of his estate, instituted this wrongful death and survival action against City Welding as the result of her husband's death. City Welding joined George and Mark McClymonds, the owner and the operator of the dump truck as additional defendants. The McClymonds then brought Robinson into the case as an additional defendant. City Welding also joined several other persons and entities as additional defendants. The lower court directed verdicts in favor of all such other parties. They are no longer involved in the case or the instant appeal, and we are presented with no issues regarding them.

The case was bifurcated for trial. Thus, the jury considered the possible liability of City Welding and Robinson on strict liability grounds, and the possible liability of George and Mark McClymonds on theories of negligence. A verdict in favor of the Plaintiff was returned against City Welding and Robinson, and the jury found both McClymonds to be free of liability. Subsequently, the lower court granted Robinson's motion to mold the verdict, ordering that Robinson was entitled to indemnity from City Welding as a matter of law.

After post-trial proceedings in the lower court, the Plaintiff, Robinson, and City Welding have all filed appeals to our Court which have been consolidated for our consideration. We shall review the claims of each appellant, below.

*Appeal of Robinson Service and Equipment, Inc.*
(No. 874 Pittsburgh, 1982)

Robinson first argues that it should not have been held liable under Section 402A of the Restatement (Second) of Torts, as it was not a "seller" of dump trucks within the

meaning of that term in the Restatement section. Robinson claims that it acted only as an intermediary between George McClymonds and City Welding by installing the dump truck body on the chassis and cab it had sold to McClymonds. Robinson further contends that as the seller of the chassis and cab, it cannot be held liable for an injury which resulted from a defect in the dump body manufactured according to the specification of George McClymonds, which it merely relayed to City Welding on behalf of McClymonds.

In *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), the Pennsylvania Supreme Court adopted Section 402A of the Restatement (Second) of Torts. That section provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In *Berkebile v. Brantly Helicopter Corporation*, 462 Pa. 83, 337 A.2d 893 (1975), the Court held that to recover against a supplier under a theory of strict liability requires, in substance, only two elements of proof: that the product was defective, and that the defect was the proximate cause of the plaintiff's injuries. Robinson does not dispute the fact that the truck's tailgate mechanism was defective when the truck was supplied, or the fact that the defect was the proximate cause of decedent's injury. Rather, as noted

above, Robinson urges that it was not a "seller" as defined in Section 402A.

■■■■ It has been held that the term "seller" in Section 402A is used generically to include all suppliers of products. *Berkebile v. Brantly Helicopter Corp., id.* All those engaged in the business of supplying products for use or consumption by the public are subject to strict liability for injuries caused by a defective condition unreasonably dangerous to the user or consumer of his property. *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977). The record establishes that the evidence was sufficient to support the jury finding that Robinson was liable under § 402A as a supplier of a defective product, which defect caused decedent's injuries. Robinson had been in the business of selling trucks for approximately twenty-five years at the time of trial. George McClymonds needed a dump truck with a chute in the middle of the tailgate and suggested that Robinson obtain the dump body from City Welding, which it did. Robinson then installed the defective dump body on the chassis and sold the completely assembled dump truck to Mr. McClymonds. Such evidence amply supports the conclusion that Robinson could be found liable as a "seller" under Section 402A.

Robinson also contends that the lower court erred by instructing the jury that Robinson was invoking the defense that it was an occasional seller.[1] Robinson claims this was error because it defended on the basis that it was not a seller of dump trucks at all. We find that any arguable error in the jury instructions regarding the occasional seller rule was harmless. In response to a special interrogatory, the jury specifically found Robinson not to have been an occasional seller of dump trucks and the evidence fully supports that conclusion. The lower court's instruction could only have had the effect of permitting the jury to absolve Robinson of liability. Therefore, we can discern no

---

**1.** In *Berkebile v. Brantly Helicopter Corp.*, supra, the court held that occasional sellers who are not in the business of selling or supplying such products are not "sellers" subject to strict liability.

basis for granting relief to Robinson based upon the court's charge on the occasional seller rule.

We therefore reject the arguments and appeal of Robinson.

*Appeal of Helen M. Walasavage, Administratrix of the Estate of Francis R. Walasavage*

(No. 985 Pittsburgh, 1982)

■ Helen M. Walasavage appeals from the Order of the lower court entered July 12, 1982, granting the exceptions of City Welding to the bill of costs filed on behalf of the Plaintiff. The lower court permitted Ms. Walasavage to recover the record costs, whereas she demanded various other costs totaling over $20,000.00. Specifically, she contends that the lower court erred in denying her request for reimbursement of all costs incurred in connection with her successful litigation, including expert witness fees and costs, subpoena costs, witness travel expenses, meals and lodging expenses for lay witnesses, telephone and postage expenses and other "non-record" costs incurred.

We know of no authority for an award to a successful litigant in cases like the instant one of such expenses as the Plaintiff seeks. She cites no authority for her request and frankly declares that she desires that this Court establish a new rule permitting such costs to be recovered. While the Plaintiff's contentions are thought-provoking, we decline to exercise any authority we may have as an appellate court in this Commonwealth to alter the established practice of limiting cost recovery in cases such as the instant one to record costs. Such a significant and fundamental change as that sought by the Plaintiff-Appellant involves considerations best left to either the legislature or to our Supreme Court, which has the ultimate judicial authority in our Commonwealth to establish rules governing the imposition and taxation of costs in litigation. See the Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. §§ 1701, 1726. We find no error and will not disturb the lower court's order rejecting the Plaintiff's request for the reimbursement of non-record litigation expenses.

*Appeal of City Welding & Manufacturing Co.*[2]
(No. 1062 Pgh. 1982)

City Welding maintains that the lower court's refusal of its motion for judgment non obstante veredicto and/or a new trial was an abuse of discretion. In a blunderbuss attack, City Welding advances almost every conceivable and many inconceivable arguments against virtually all aspects of the proceedings in the lower court. Although we have thoroughly reviewed all such contentions, considerations of time and space constrain us to limit our discussion to those points which are not obviously devoid of even arguable merit.

■ Initially, we note that on appeal from the refusal of the lower court to enter judgment n.o.v., the sole duty of the appellate court is to decide whether there was sufficient evidence to sustain the verdict, granting the verdict winner the benefit of every favorable inference reasonably to be drawn from the evidence and rejecting all unfavorable testimony and influences. *McDevitt v. Terminal Warehouse Company,* 304 Pa.Super. 438, 450 A.2d 991 (1982). The grant or denial of a new trial is within the sound discretion of the trial court, whose decision will be reversed only where the record indicates that the trial court committed an error of law or clearly and palpably abused its discretion. *Palmer v. Brest,* 254 Pa.Super. 532, 386 A.2d 77 (1978).

City Welding first contends that the lower court erred in not instructing the jury regarding intervening acts or superseding causes under Section 402A of the Restatement (Second) of Torts. City Welding argues that the use of the chute in the truck, which was apparently designed as a coal chute, to unload hot asphalt, was not reasonably foreseeable by the manufacturer and that this "misuse" was the primary or superseding cause of decedent's injuries.

2. The Plaintiff's Complaint identified this Defendant as: Tony Marinelli and Joseph Marinelli, d/b/a City Welding and Manufacturing Company, a/k/a City Welding. A stipulation was filed thereafter in the lower court amending the name of the Defendant to: City Welding & Manufacturing Co.

▇▇▇ Given the occurrence of a malfunction or a defect, intervening negligence assumes legal significance only if it is a superseding cause of the victim's injuries and questions of proximate causation should normally be left to the trier of fact. *Kuisis v. Baldwin-Lima-Hamilton Corporation,* 457 Pa. 321, 319 A.2d 914 (1974). The record shows that in the instant case the lower court permitted the jury to find against all the Defendants separately or jointly, and to consider the theories of strict liability and negligence separately. The jury specifically determined that neither George McClymonds, the owner, nor Mark McClymonds, the operator, were negligent with regard to Mr. Walasavage's accidental death. They were the only persons or entities whose conduct could have been found to be intervening or superseding to that of City Welding or Robinson. Evidence was presented that the tailgate was defective when the truck was supplied to the owner and operator. The jury obviously determined that such a defect existed, and that the problem substantially contributed to the harm which befell Mr. Walasavage. In view of such findings, and the instructions given by the lower court[3], we can discern no reversable error in the lower court's failure to charge the jury on intervening cause and superseding negligence rules.

▇▇▇ We next address City Welding's argument that the lower court erred in failing to charge the jury on the doctrine of assumption of risk. However, assumption of the risk is a defense in a strict liability case brought pursuant to Section 402A only if the injured party knows of the specific defect causing injury and voluntarily proceeds to use the product with knowledge of the danger caused by the defect. *Ferraro v. Ford Motor Co.,* 423 Pa. 324, 223 A.2d 746 (1966). In the instant case, there was no evidence presented that decedent knew of the defect that caused his

---

3. The jury was instructed regarding City Welding that: "... Where the defective condition combines with other circumstances and other forces to cause harm suffered by the Plaintiff, the Defendant or Defendants are responsible for the harm if the defective condition was a substantial contributive factor in bringing about the harm."

death or appreciated the danger surrounding the defect. Therefore, an assumption of risk charge would have been improper and the lower court correctly refused the request for such a charge.

■■■ City Welding contends that the lower court erred in allowing the testimony of Dr. Andrew Verzilli regarding damages, and compounded its error when it instructed the jury that the testimony indicated decedent would have earned $60,000.00 each year until retirement at age sixty-five. The admission of expert testimony is a matter within the sound discretion of the trial court, whose decision will not be reversed unless the court clearly abused that discretion. *Junk v. East End Fire Dept.*, 262 Pa.Super. 473, 396 A.2d 1269 (1978). It appears that Dr. Verzilli based his testimony upon accepted economic concepts concerning the yearly growth rate of decedent's income. The jury was free to accept or reject Dr. Verzilli's testimony relating to decedent's future earning capacity. We conclude that the lower court did not abuse its discretion in allowing the testimony of Dr. Vergilli concerning damages. With regard to its charge to the jury on the testimony of the expert as to a yearly salary, we also find no reversible error. Even if we assume that the court incorrectly restated Dr. Verzilli's testimony as the predicted losses of earnings, the court correctly instructed the jurors that if the court misstated any figures or facts, that it was the jury's recollection that was controlling, and not the court's. We are also mindful that the jury considered the testimony of other experts on the question of lost earnings and damages. We find that the lower court committed no reversible error under these circumstances.

■■■ We next examine City Welding's claim that the verdict, in the amount of $838,400.00 was grossly excessive, and cannot stand. We do not agree. It is well-established that the duty of assessing damages is within the province of the jury and should not be disturbed by the court unless it clearly appears that the amount awarded results from caprice, prejudice, partiality, corruption or some undue influ-

ence. *Tonik v. Apex Garages, Inc.*, 442 Pa. 373, 378, 275 A.2d 296, 299 (1971). There is nothing in the entire record to suggest the existence of such factors. Therefore, we will only consider the verdict excessive if it shocks our sense of justice. *Pratt v. Stein*, 298 Pa.Super. 92, 444 A.2d 674 (1982). In view of the loss of life of Mr. Walasavage, the expert testimony offered as to lost earnings, and other evidence in the record, we simply do not find the jury's award to be shocking or unjust.

■ City Welding urges that reversible error occurred when the trial judge permitted the jury to retain a sheet of paper setting forth the various categories of damages recoverable in wrongful death and survival actions. There is no suggestion of real prejudice resulting to City Welding as a result of the jurors' retention of the document in issue. Accordingly, we find no basis for awarding a new trial because the jury had possession of the paper.

■ City Welding next maintains that the lower court erred in refusing to permit its counsel to read the entire transcript of the pre-trial deposition testimony of one Fred Adams to the jury during the trial. There is no merit in this contention. The court's ruling was entirely correct in light of the fact that Mr. Adams was present at trial and was actually called as a witness.[4] Pennsylvania Rule of Civil Procedure 4020(a)(3)(e) provides for the use of deposition testimony of a non-party witness, where the witness is available to testify at trial, only under exceptional circumstances. City Welding has suggested no exceptional circumstances which would have justified the court in allowing the whole of Mr. Adams' deposition testimony to be read to the jury at trial.

■ City Welding raises the argument that the lower court erred in admitting evidence concerning an experiment conducted by City Welding in which the dump truck was filled with gravel, the bed of the truck was raised, and the

---

4. The court properly allowed parts of the deposition testimony to be used at trial for the purpose of attempting to impeach his credibility. See Pennsylvania Rule of Civil Procedure 4020(a)(1).

tailgate flew open. It is well settled that questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and will be reversed on appeal only where a clear abuse of that discretion exists. *Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941 (1978). We perceive no abuse of discretion by the lower court in permitting testimony concerning the experiment in question.

■ Next presented is the contention that the lower court erred in permitting the Plaintiff's expert witness, Dr. John Lepone, to testify regarding matters that were not included in his original report. Appellant cites Pennsylvania Rule of Civil Procedure 4003.5(c) to support its argument.[5] While City Welding has generally asserted that this produced "an element of surprise", it has not suggested any specific prejudice it suffered or any other handicap resulting from the admission of the testimony in question. Our own review of the record has disclosed no possibly significant prejudice to City Welding, even assuming the testimony in issue was admitted in violation of the Rule. Therefore, we cannot conclude that a new trial is mandated as the result of the admission of such testimony, and reject the Appellant's claim.

City Welding urges that the lower court committed a serious abuse of discretion and reversible error in refusing to grant its request for a continuance as the result of the illness of an attorney. The record shows that at the inception of the case Richard McCandless, Esq. and Richard J. Audino, Esq. entered separate appearances for City Weld-

---

5. Appellant refers us to Rule 4003(c), which does not exist. We have assumed that it was intended that we rely on Rule 4003.5(c), which provides:

To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, his direct testimony at the trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto. However, he shall not be prevented from testifying as to facts or opinions on matters on which he has not been interrogated in the discovery proceedings.

ing. Mr. McCandless was designated by P.M.A. Insurance Company, the liability insurance carrier for City Welding, and Mr. Audino was selected by City Welding as its private counsel. Thereafter, all pre-trial proceedings were conducted by Mr. McCandless, who executed all papers in the name of City Welding and handled all discovery matters and the process of selecting and preparing witnesses. Thus, it is clear that Attorney McCandless served as lead defense counsel. Moreover, it appears that the participation of Mr. Audino and one of his associates in pre-trial preparations and procedures was minimal.

On February 16, 1982, the day of the trial, Mr. McCandless submitted an application for continuance on the grounds that Mr. Audino has suffered an apparent heart attack four days earlier, and would be unable to appear at trial. The Plaintiff objected to the application on the grounds that she had prepared for trial at great expense and would be prejudiced by a postponement since she had summoned twenty witnesses to testify, some coming from as far as Maine, and expert witnesses coming from both Pittsburgh and Philadelphia. The lower court denied the request for a continuance, and the trial proceeded without Attorney Audino.

City Welding argues that Attorney McCandless could not properly represent it in the absence of Mr. Audino because of the possibility of a verdict in excess of the limits of its insurance policy. However, our examination of the record convinces us that Mr. McCandless made every effort to win a verdict for City Welding and to minimize the amount of damages the jury might award if it found City Welding liable. The Appellant has not pointed out, nor does our thorough review disclose any aspect of conduct by Attorney McCandless which would suggest he favored P.M.A. Insurance vis-a-vis City Welding or did not capably strive to protect City Welding's exposure to liability in excess of the insurance policy limits. No conduct on his part is now challenged by the Appellant, nor is any action suggested which he may have neglected, or performed in a

substandard fashion to the detriment of City Welding. We cannot ignore the maxim that an insurer owes its insured a duty of good faith, and a violation of that duty may lead to liability for the full amount of the verdict against the insured. *Cowden v. Aetna Casualty & Surety Company*, 389 Pa. 459, 134 A.2d 223 (1957); *Shearer v. Reed*, 286 Pa.Super. 188, 428 A.2d 635 (1981).

The trial court is vested with broad discretion in the determination of whether a request for a continuance should be granted, and an appellate court should not disturb such a decision unless an abuse of that discretion is apparent. *In Re Hall*, 288 Pa.Super. 495, 432 A.2d 621 (1981); *Love v. Harrisburg Coca Cola Bottling Co.*, 273 Pa.Super. 210, 417 A.2d 242 (1979). We must carefully scrutinize with extra care the lower court's action in denying a continuance when such action operates to deprive a litigant of his chosen counsel, or may leave him with alternative counsel with arguably conflicting loyalties or interests. Having such cautions in mind in the instant case, we still must conclude that there was no abuse of discretion by the lower court here, where it is clear that the Appellant suffered no demonstrable or even suggested prejudice as the result of Mr. Audino's absence or representation by Mr. McCandless. Moreover, we cannot ignore the clear prejudice which would have resulted to the Plaintiff had the requested continuance been granted. Therefore, we reject the Appellant's request for new trial based upon the lower court's refusal of a continuance.

We next turn to the claim by City Welding that the lower court erred in granting full indemnification against it and in favor of Robinson. City Welding argues that in a strict liability case under Section 402A the seller of a defective vehicle is as responsible for resulting injury as the manufacturer of the vehicle and thus should not be entitled to a right of indemnification from the manufacturer. However, the general rule is that indemnification is proper in such a case. The law places final responsibility in such instances upon the party primarily responsible for the defective prod-

uct, in most instances its manufacturer. In *Burbage v. Boiler Engineering and Supply Co., Inc.*, 433 Pa. 319, 249 A.2d 563 (1969), a strict liability case brought under Section 402A, the Pennsylvania Supreme Court held that a boiler manufacturer was entitled to indemnity from the manufacturer of a defective valve on the grounds that the responsibility for discovery and prevention of the defect should ultimately be upon the valve manufacturer. The Court stated:

> The right of indemnity rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by law to an injured party. The right to indemnity enures to a person who, without active fault on his own part, has been compelled by reason of some legal obligation to pay damages occasioned by the negligence of another. The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of comparative negligence but rather on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. Secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal obligation between the parties or arising from some positive rule of statutory or common law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. *Id.*, 433 Pa. at 326, 327, 249 A.2d at 567.

■ In the instant case City Welding initially allowed the dump truck to leave its possession in a defective condition and Robinson's liability arose solely because it became a seller of the vehicle. Therefore, we find that the lower court correctly ruled, as a matter of law, that Robinson was entitled to full indemnification from City Welding.

As noted earlier, we have reviewed a number of other contentions raised by City Welding and determined them to be devoid of even arguable merit. We therefore reject all

of the arguments raised by City Welding that the lower court erred in refusing its motions for judgment n.o.v. or a new trial.

Affirmed.