595 A.2d 1198

Franco MOSCATIELLO i/a, t/d/b/a Moscatiello Construction Company

v.

PITTSBURGH CONTRACTORS EQUIPMENT COMPANY, a Subsidiary of Tri–State Machinery Distributors, Inc.

v.

CURBMASTER, INC., Appellant.

Superior Court of Pennsylvania.

Argued April 25, 1991.

Filed July 30, 1991.

Reargument Denied Sept. 20, 1991.

David G. Klaber, Pittsburgh, for appellant.

Alan Berman, Pittsburgh, for appellee Moscatiello.

Before ROWLEY, President Judge, and CAVANAUGH and HESTER, JJ.

HESTER, Judge:

Curbmaster, Inc. appeals from the judgment entered on the August 21, 1990 order of the Allegheny County Court of Common Pleas which denied appellant's post-trial motions and awarded appellee, Pittsburgh Contractors Equipment Co. ("PCEC"), the right to indemnification from appellant.

Appellant raises numerous allegations of trial court error. We remand on the issue of set-off of damages, but in all other respects, we affirm.

The action underlying this appeal was a breach of contract suit which appellee, Franco Moscatiello i/a, t/d/b/a Moscatiello Construction Company ("Moscatiello"), filed against PCEC to recover damages incurred from the purchase of a defective concrete spreading machine ("paver"). The paver was sold by PCEC and manufactured by Curbmaster for use by Moscatiello in the reconstruction of a road in Pittsburgh.

On or about May 19, 1987, Moscatiello and PCEC entered into a contract for the purchase of a Curbmaster concrete spreader machine for a total price of $85,125.42. Approximately one month before the contract was executed, Franco Moscatiello and his superintendent, Jay Palino, met with the vice president of PCEC to discuss the purchase of the paving machine. At the time of the meeting, PCEC was aware that Moscatiello had been awarded a contract by the Pennsylvania Department of Transportation ("PennDot") to reconstruct a road and that PennDot required that the concrete surface of the road be laid by a certain type of paving machine.

Appellant also participated in these preliminary discussions. The vice president of Curbmaster had a telephone conversation with PCEC and Moscatiello in which he suggested that either of two machines manufactured by Curbmaster would be suitable for the PennDot job. Reproduced Record ("R.R.") at 92–93a, 340–41a, 432a, 492a.

The purchase agreement executed by Moscatiello and PCEC stated on the reverse side that no warranties were offered on equipment sold and that any implied warranties were excluded in favor of the manufacturer's offer of warranties. The contract also contained a provision which limited the buyer's remedy solely to return of the purchase price, less wear and use of the machine. In addition, all consequential and incidental damages were expressly excluded. Moscatiello had no previous dealings with PCEC

and was not on notice that the sales agreement relinquished warranties and limited damages.

In order to obtain the paver for Moscatiello, PCEC entered into a second sales agreement (the "Curbmaster contract") with the manufacturer of the machine, Curbmaster. Pursuant to the Curbmaster contract, Curbmaster agreed to manufacture the paver and sell it to PCEC for $68,-693.42. Curbmaster also warranted that the product would be free from defects in material and workmanship under normal use and service for ninety days. The warranty specifically and expressly disclaimed all other warranties, express, implied or statutory, including warranties of merchantability and fitness. It limited the buyer's remedies to repair, replacement, or return of the purchase price, and excluded liability for all consequential damages.

The trial court found, however, that the Curbmaster warranty agreement was a different document than the sales agreement. The testimony at trial established that the warranty agreement typically is found as an attachment to the Curbmaster owners and parts manual. No witness could establish with certainty that the warranty agreement ever reached either PCEC or Moscatiello.

The paver was manufactured by Curbmaster at its plant in Iowa and shipped to Pittsburgh, arriving at Moscatiello's job site on June 15, 1987. A Curbmaster employee was present when the paver arrived, assisted Moscatiello employees in assembling it, instructed Moscatiello employees on how to operate the machine, and was present when the machine was used for the first time.

According to the testimony of four witnesses during the trial, from the time that the machine first was used in June, 1987, to on or about November 12, 1987, when it was used last, it failed to lay concrete evenly. Furthermore, the product which resulted was unacceptable to PennDot. Throughout the five-month period of the paver's operation, Moscatiello made numerous complaints to PCEC about the paver's failure to produce an acceptable product. During this period, PCEC and Curbmaster unsuccessfully attempt-

ed numerous times to remedy the defects in the machine. The machine finally was returned to Curbmaster in December, 1987. As a result of the failure of the paver to perform its functions properly, Moscatiello incurred increased labor costs in order to produce a product acceptable to PennDot.

On February 8, 1988, Moscatiello filed a complaint against PCEC asserting breach of contract, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. PCEC joined Curbmaster as an additional defendant, asserting breach of express warranty, breach of implied warranties of merchantability and fitness for a particular purpose, and negligence. By agreement of the parties, PCEC dismissed its negligence claim against Curbmaster and amended its complaint to add a claim against Curbmaster for breach of contract.

Following a bench trial, the trial court issued an opinion and order dated March 14, 1990, awarding $146,811.43 in damages plus interest to Moscatiello and against PCEC and Curbmaster jointly. Both PCEC and Curbmaster filed timely post-trial motions for relief, and on August 21, 1990, the trial court issued an opinion and order denying Curbmaster's post-trial motions and granting PCEC's post-trial motion only insofar as it related to PCEC's right of indemnification from Curbmaster. Curbmaster filed this timely appeal from the trial court's order of August 21, 1990.[1]

Curbmaster first argues that the trial court erroneously based its grant of indemnification to PCEC upon a principle of tort rather than contract law. Curbmaster asserts that the "mere conduit" theory whereby the manufacturer of defective goods must indemnify the seller acting as a mere conduit between the consumer and the manufacturer applies only to tort actions for personal injury or property damage and not to complaints, such as the instant

1. PCEC also filed a timely appeal to the order of August 21, 1990, which was docketed at No. 1557 Pittsburgh, 1990.

action, alleging economic losses resulting from a breach of contract.

In granting PCEC the right of indemnification from Curbmaster, the trial court relied upon several landmark cases in this area of law, including *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1960), *Spagnol Enterprises, Inc. v. Digital Equipment Corp.*, 390 Pa.Super. 372, 568 A.2d 948 (1989), *Walasavage v. Marinelli*, 334 Pa.Super. 396, 483 A.2d 509 (1984), and *Klages v. General Ordnance Equipment Corp.*, 240 Pa.Super. 356, 367 A.2d 304 (1976). The trial court's ruling undoubtedly is correct and we are baffled by Curbmaster's failure to acknowledge the current state of the law on this issue.

In *Kassab v. Central Soya, supra,* our Supreme Court first enunciated the rule in Pennsylvania that a manufacturer may be held liable in a breach of warranty suit for damages sustained by a consumer as a result of the purchase of a defective product, even in the absence of privity of contract between the manufacturer and the consumer. The plaintiffs in *Kassab* filed suit against the seller and the manufacturer of cattle feed for damages they sustained when tainted feed caused abortions and sterility in their cattle. The court held that the defect in the feed constituted a clear breach of the implied warranty of fitness for a particular purpose and that the lack of privity between the plaintiffs and the manufacturer would not insulate the manufacturer from liability for breach of warranty.

Though the loss sustained by the plaintiffs in *Kassab* was described by the court as property damage, we have stated subsequently that it was clear that the holding in *Kassab* was "intended to apply to all breach of warranty cases brought under the warranty provisions of the Uniform Commercial Code for all types of damages, whether they be personal injuries, damage to property or economic loss." *Spagnol Enterprises, Inc. v. Digital Equipment Corp., supra,* 390 Pa.Super. at 380, 568 A.2d at 952.

In *Spagnol,* relying on *Kassab,* we upheld the award of economic damages to a purchaser of computer equipment

who sued the manufacturer of the defective equipment for breach of an implied warranty of fitness for a particular purpose. In response to the manufacturer's argument that there were no Pennsylvania cases which have extended warranty to persons who sustained neither personal injury nor damage to property other than the warranted property, we stated:

> [W]e interpret *Kassab* to allow the award of damages to a plaintiff where injury has been incurred as the result of a defectively manufactured product which in turn results in a needless expenditure of monies in attempting to make the defective product operational and functional so as to be productive in a 'business sense.' To hold otherwise would be to permit a manufacturer to place a product in the stream of the market and plead no liability when the instrument does not conform to the buyer's needs which were known by the manufacturer at the time the item was sold.

*Spagnol Enterprises, Inc. v. Digital Equipment Corp., supra,* 390 Pa.Super. at 380–81, 568 A.2d at 952.

In addition to permitting the consumer to recover economic losses from sellers and manufacturers of defective products in breach of warranty actions, we have utilized the "mere conduit" theory to entitle mere sellers of products that injure consumers to indemnity from the manufacturer of the product on the grounds that the relative culpability of the seller pales in comparison to that of the manufacturer. *See Walasavage v. Marinelli, supra* (plaintiff killed by defect in tailgate); *Klages v. General Ordnance Equipment Corp., supra* (plaintiff shot in head when product malfunctioned).

Curbmaster relies upon cases that are inapplicable to support its argument that the "mere conduit" theory provides no basis for the imposition of liability upon a manufacturer in a suit for economic losses. In *REM Coal Co. v. Clark Equipment,* 386 Pa.Super. 401, 563 A.2d 128 (1989), for example, we held that purely economic losses cannot be recovered where the plaintiff's action sounded solely in

negligence or strict liability. Our decision in *REM* is inapplicable in that the complaints filed both by Moscatiello and PCEC against Curbmaster were premised upon breach of contract and breach of implied warranties of merchantability and fitness for a particular purpose. The plaintiffs in *REM* and the remainder of the cases cited by Curbmaster sought recovery in tort rather than contract law.

As we stated previously, the right of a consumer to recover economic losses from a manufacturer of a defective product in a breach of warranty action is well-established in Pennsylvania. *Kassab v. Central Soya, supra; Spagnol Enterprises, Inc. v. Digital Equipment Corp., supra.* Similarly, through the application of the "mere conduit" theory, we have established the right of a seller to indemnification from the manufacturer of a defective product. *Walasavage v. Marinelli, supra; Klages v. General Ordnance Equipment Corp., supra.* Thus, the trial court's grant of indemnification to PCEC from Curbmaster is sound and thoroughly supported by precedent. Curbmaster's assertions to the contrary, in view of the clarity of our decisions on this issue, unquestionably are erroneous.

█ Curbmaster next argues that the trial court erred by failing to give effect to various provisions of its warranty agreement which would operate either to bar recovery of any amount by PCEC or to limit Curbmaster's liability to the purchase price paid by PCEC for the paver. PCEC responds that the trial court's failure to apply Curbmaster's warranty agreement was harmless since the warranty exclusions were ineffective. We agree.

Curbmaster's conclusion that its warranty agreement applies to PCEC is based upon the lack of a finding by the trial court that the warranty disclaimer, limitation of remedies, or limitation of damages contained in the warranty agreement was inconspicuous or unconscionable. While we agree that the record supports Curbmaster's claims regarding the effectiveness of those provisions of the warranty agreement, we find the contents of the warranty agreement

to be inapplicable to the terms of the sales contract between PCEC and Curbmaster.

First, the testimony at trial established that the sales contract between PCEC and Curbmaster did not contain and actually made no reference to the warranty agreement. In fact, the evidence established that the warranty agreement was a separate document which was attached to Curbmaster's owner's and parts manual. Curbmaster typically delivers its manual to its customers several days after the sales agreement is signed.

Thus, this is not the typical sales contract which contains language which may or may not provide sufficient notice to the customer of the relinquishment of valuable consumer rights. If the warranty agreement is not part of the sales contract and there is no reference to the existence of the warranty provisions, the customer when signing the sales contract obviously has not agreed to accept them and is not bound by them.

Furthermore, the trial court found that the warranty agreement which supposedly accompanied Curbmaster's owner's and parts manual never was delivered to the buyer of the paver. In addition, although the trial court did not make an express finding to this effect, there also is some doubt whether the warranty agreement ever arrived in the possession of the seller, PCEC. The testimony established only that Curbmaster managed to deliver its owner's and parts manual to PCEC. Whether the warranty information accompanied the owner's and parts manual when it was delivered to PCEC is not clear. Thus, even if the warranty agreement were to be incorporated into the sales agreement in some fashion, Curbmaster did not establish that PCEC ever had the opportunity to read it.

Curbmaster argues that even if PCEC did not receive the Curbmaster warranty agreement, the evidence established that PCEC was aware of the existence of a warranty, and that a warranty does not have to be received to be effective. However, our review of the record reveals that there is no evidence that PCEC was aware of the provisions of the

warranty agreement which disclaimed numerous warranties and severely limited the buyer's damages and remedies. Under these circumstances, we have no doubt that the trial court properly ruled that in spite of the existence of Curbmaster's warranty agreement, PCEC was entitled to receive indemnification from Curbmaster for the damages it was ordered to pay to Moscatiello as a result of PCEC's purchase of a defective product from Curbmaster.

■ Curbmaster next contends that the trial court erred when it found Curbmaster directly liable to Moscatiello. Curbmaster argues that it cannot be found directly liable to Moscatiello because its joinder was improper, and privity of contract between Curbmaster and Moscatiello was not established. PCEC responds that Curbmaster properly was joined as an additional defendant, since the facts support a conclusion that Curbmaster is liable solely to Moscatiello for breach of the implied warranties of merchantability and fitness for a particular purpose. Furthermore, PCEC contends that privity of contract between a buyer and manufacturer no longer operates in Pennsylvania as a bar to recovery by the buyer. We concur with PCEC on both propositions.

Pa.R.C.P. 2255(d) provides the following:

The plaintiff shall recover from an additional defendant found liable to him alone or jointly with the defendant as though such additional defendant had been joined as a defendant and duly served and the initial pleading of the plaintiff had averred such liability.

In *Sheriff v. Eisele*, 381 Pa. 33, 35, 112 A.2d 165, 166 (1955), the Supreme Court held that when an additional defendant is joined pursuant to Rule 2255(d), he immediately becomes subject to the plaintiff's claim in every respect and with the same force and effect "as if he had been originally been named as a defendant, and even without the necessity of any pleading being filed by the plaintiff against him." More recently, citing the Supreme Court's decision in *Sheriff v. Eisele, supra,* the Commonwealth Court stated in

*Richards v. Alston,* 123 Pa.Cmwlth. 95, 553 A.2d 488, 490–91 (1989):

> Under Pa.R.C.P. 2255(d), a plaintiff, even though he or she may have asserted no claim against an additional defendant in a pleading against it, may recover directly from an additional defendant as from an original defendant when the facts established at trial show that the additional defendant is liable to him or her either solely or jointly or severally with the original defendant.

■ As we stated previously at length, it is now well-established in Pennsylvania that a manufacturer may be held directly liable in a breach of warranty action in which a consumer sues the party who sold him the defective product. *See Kassab v. Central Soya, supra; Spagnol Enterprises, Inc. v. Digital Equipment Corp., supra.* It is of no consequence that there were two contracts involved in this action and that neither Moscatiello nor PCEC alleged that Curbmaster was liable to Moscatiello, as Curbmaster argues. The sole issue is whether the facts at trial established that Curbmaster was liable to Moscatiello solely, jointly, or severally. We conclude that the facts did so establish, and therefore, we find no error in the trial court's ruling that the joinder of Curbmaster was proper.

■ Turning to the second portion of Curbmaster's argument regarding direct liability, we reiterate our previous conclusion that the absence of privity does not operate as a bar to recovery by a consumer who seeks economic damages in a suit against a manufacturer for breach of warranty. Curbmaster raised this issue previously in its first argument regarding indemnification. This time, however, Curbmaster contends that the lack of privity between Moscatiello and Curbmaster bars recovery from Curbmaster of economic damages. Curbmaster's contention clearly is erroneous.

As the trial court correctly observed, "it is [u]ncontroverted that both horizontal privity, determinative of who may sue, and vertical privity, determinati[ve] of who may be

sued, no longer operates in this Commonwealth. The law in Pennsylvania is clear that, for recovery for breach of implied warranties, a party need not prove 'privity of contract.' *Williams v. West Penn Power Co.,* 502 Pa. 557, 467 A.2d 811 (1983); *Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1960)." Trial court opinion at 8. Moreover, the fact that the plaintiff herein sued for economic losses is of no import. We stated in *Spagnol Enterprises, Inc. v. Digital Equipment Corp., supra,* that the ruling in *Kassab* applies to all breach of warranty cases brought under the warranty provisions of the U.C.C. and to all types of damages sought, including personal injury, property damage, or economic loss. Thus, we find no error in the trial court's finding of direct liability between Curbmaster and Moscatiello.

■ Curbmaster's next allegation of trial court error involves the application of the terms of its warranty agreement to Moscatiello. Curbmaster contends that if Moscatiello can maintain a contract action against Curbmaster, then the terms of the Curbmaster warranty should apply to bar Moscatiello from recovering damages against Curbmaster. The trial court found that the warranty exclusions were inapplicable to Moscatiello according to the express language of the agreement and due to the failure of Curbmaster to establish that Moscatiello ever received the agreement. We concur with the trial court's findings.

The first sentence of Curbmaster's warranty agreement states the following:

CURBMASTER OF AMERICA, INC, warrants, *to the original purchaser,* all new machines and· equipment manufactured by Curbmaster of America, Inc. to be free from defects in material and workmanship under normal use and service.

R.R. at 705a (emphasis added). The trial court stated that it was undisputed that PCEC rather than Moscatiello was the "original purchaser" of the paver. In support of its conclusion, the court referred to a memorandum sent by Curbmaster to PCEC after the sale of the machine in which

Curbmaster informed PCEC that it was the "original purchaser". Since Moscatiello clearly was not the original purchaser, the court found that the provisions of the warranty agreement did not apply to it.

Moreover, the trial court found that Curbmaster failed to forward the warranty agreement to Moscatiello. In view of this additional finding, the court determined that the warranty agreement could not operate as a bar to Moscatiello's action for breach of warranties.

We find the trial court's reasoning to be sound, and consequently, we concur with its ruling. The warranty agreement speaks for itself. By its own terms, it clearly does not apply to Moscatiello. Indeed, even if the language were ambiguous, the fact that the agreement never was provided to Moscatiello, in our view, renders its provisions inapplicable to Moscatiello.

In its final argument, Curbmaster asserts that the trial court's award of damages to Moscatiello was contrary to the weight of the evidence and ignored evidence that Moscatiello abused the paver and did not seasonably reject it. Moscatiello responds that the evidence clearly established that it properly rejected the paver or revoked its acceptance of it. Further, Moscatiello contends that Curbmaster failed to establish that the damages Moscatiello allegedly caused were present when the paver was returned to Curbmaster's plant in Iowa.

■ Curbmaster first argues that Moscatiello's failure to effectively reject or revoke its acceptance of the paver bars it from recovering damages. The trial court found no merit in this argument by Curbmaster, and we concur.

Section 2602 of the U.C.C. provides that rejection of goods must be "within a reasonable time after their delivery." 13 Pa.C.S.A. § 2602(a). Similarly, a buyer must revoke acceptance of goods within a reasonable time after he "discovers or should have discovered the ground for it." 13 Pa.C.S.A. § 2608. Comment 4 to section 2608 is instructive as to what constitutes "reasonable" time.

Since this remedy [revocation of acceptance] will be generally resorted to only after attempts at adjustment have failed, the reasonable time period should extend in most cases beyond the time in which notification of breach must be given, beyond the time for discovery of nonconformity after acceptance and beyond the time for rejection after tender.

The trial court found that Moscatiello promptly notified PCEC and Curbmaster that the machine it accepted with latent defects was not operating properly. We agree. The evidence at trial undeniably established that representatives of Curbmaster and PCEC were notified of a defect in the paver when it arrived in Pittsburgh, as they were present to observe the problem firsthand. On four subsequent dates, including one in July, 1987, Curbmaster and PCEC representatives traveled to the construction site in an attempt to correct the persistent problems Moscatiello experienced with the paver. Their response to Moscatiello's complaints, as the trial court stated, "encouraged Moscatiello to continue to use the machine under the impression that it would continue to pave properly when fixed." Trial court opinion at 4.

In light of the frequency with which Curbmaster representatives observed the defects in the machine, it is nothing short of a misrepresentation for Curbmaster to state that Moscatiello failed seasonably to notify Curbmaster of the defects in the machine. The record amply demonstrates that Curbmaster received repeated notification of defects in its paver within a reasonable time of their discovery. We find no error, therefore, in the trial court's conclusion that Moscatiello properly rejected the paver.

■ Finally, Curbmaster argues that the damage award must be reduced to reflect the damage caused to the machine by Moscatiello. Curbmaster contends that the paver left the Curbmaster plant in perfect condition and returned with $2,408.14 worth of damage to its engine and $14,617.55 worth of damage to its body. The trial court's award for damages reflected a reduction for damages to the

engine but failed to do so with respect to the alleged damages to the body.

The issues of whether damages to the body of the machine occurred while in the possession of the purchaser and of the extent of those damages are in dispute. We cannot resolve this factual dispute and therefore cannot render an opinion on the issue of the set-off of damages raised by Curbmaster. We remand to the trial court for a determination of whether Moscatiello caused damages to the body of the machine unrelated to the manufacturer's defects, the amount of damages, if any, which were caused by Moscatiello, and whether Curbmaster is legally entitled to a set-off in the amount of damages awarded by the trial court to Moscatiello.

Judgment affirmed in part and case remanded for a determination on the issue of the set-off in damages. Jurisdiction relinquished.