600 A.2d 220

AUTOMATIC TIME AND CONTROL CO., INC., Appellant,

v.

ifm ELECTRONICS, GmBh, a Foreign Corporation, Appellee.

Superior Court of Pennsylvania.

Argued July 17, 1991.

Filed December 17, 1991.

Albert B. Gerber, Philadelphia, for appellant.

Daniel L. Lemisch, Philadelphia, for appellee.

Before POPOVICH, HUDOCK and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The plaintiff-appellant instituted the instant appeal from a trial court order granting preliminary objections in the nature of a demurrer, and dismissing the plaintiff's complaint with prejudice. We affirm the order of the trial court.

The plaintiff-appellant, Automatic Time and Control Co., Inc., was a distributor of electrical parts, including devices known as proximity switches. The plaintiff was sued in separate products liability actions by two individuals who claimed that proximity switches distributed by the plaintiff had caused them injuries. The switches in question were manufactured by the defendant-appellee, ifm Electronics, GmBh. The plaintiff asked the defendant to defend the suits and indemnify the plaintiff in both actions. The defendant either failed or refused to respond. The plaintiff defended the two cases and was successful in avoiding liability, as both suits were dismissed. There was no determination of a product defect or other negligence in manufacturing in either of the personal injury actions. The plaintiff then instituted the instant litigation, claiming that it is legally entitled to be indemnified by the defendant for the legal fees and court costs it incurred in defending the two products liability actions.

The issue presented by this appeal is whether a retailer or other seller of a product has a right to recover attorney's fees and other defense expenses from the manufacturer of the product, incurred in the defense of a product liability case, where there has been no finding that there was manufacturing neglect, and no liability was incurred by the seller in the product liability action. Federal District Courts in Pennsylvania have decided two cases involving claims identical to that asserted by the plaintiff. In both *Papas v. Ewing Brothers, Inc.*, 581 F.Supp. 1272 (M.D.Pa. 1984), where the plaintiff was a retailer, and *Merck & Company, Inc. v. Knox Glass, Inc.*, 328 F.Supp. 374 (E.D.Pa.1971), in which the plaintiff was an intermediate seller, recoveries of defense costs, including counsel fees,

were sought against manufacturers after the plaintiffs had successfully defended cases involving product liability claims. In each of the product cases, there was no finding of neglect in manufacturing, and no liability was imposed against the seller. In *Papas* and in *Merck & Co.*, both Federal District Courts, relying on Pennsylvania law, rejected the subsequent indemnification claims asserted by the sellers against the manufacturers.

Although these Federal Court decisions may provide guidance to us, we are not bound by their interpretations of our state law. *Dorn v. Stanhope Steel, Inc.*, 368 Pa.Super. 557, 534 A.2d 798 (1987), appeal denied 518 Pa. 656, 544 A.2d 1342 (1988); *Commonwealth v. Lacey,* 344 Pa.Super. 576, 496 A.2d 1256 (1985). Accordingly, we must independently analyze the issue presented by this appeal, which appears to be one of first impression in the appellate courts of our Commonwealth.

The resolution of this appeal requires an examination of the principles applicable under the doctrine of indemnification. In *Sirianni v. Nugent Bros., Inc.,* 509 Pa. 564, 506 A.2d 868 (1986), our Supreme Court stated that a right of indemnity arises only when a person or entity secondarily liable has been compelled, by reason of some legal obligation, *to pay damages* occasioned by the *negligence* of the party which should be primarily liable. "Primary" liability can only rest upon a *fault* by the person or entity primarily responsible for a *defect or a dangerous condition* in the product. *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368 (1951). It is evident that under such guidelines, no right of indemnification arises in the circumstances presented in the instant case. First, the plaintiff retailer has *not been compelled to pay any damages* in the underlying product liability actions. Second, there has been *no* determination of any negligence or other *fault* by the defendant manufacturer in failing to discover or correct a *defect or dangerous condition* in either of the proximity switches involved in the two separate products liability cases defended by the plaintiff. Thus, the defendant cannot be held to

have any "primary" liability, for purposes of the doctrine of indemnification.

The Restatement of Restitution provides further support for this conclusion. In Section 93(1), it states that a right of indemnification is created: "Where a person has supplied to another a chattel which because of the supplier's *negligence or other fault is dangerously defective* for the use for which it is supplied and both have become *liable* ... to a third person injured by its use...." (emphasis added) Section 95 of the Restatement provides for restitution for expenditures properly made in the discharge of liability for "harm caused to a third person because of ... *negligent failure to make safe* a dangerous condition of land or chattels which was created by ... *misconduct* ..." of the party from whom indemnification is sought. (emphasis added) Obviously, the Restatement only envisions a right of restitution arising when there has been *harm* caused to a third person because of a *dangerous defect* in the chattel supplied, which created a *liability* for resulting *harm* to the injured party. Such factors were not present in the instant case.

We must also recognize that if the plaintiff's action were permitted to proceed, it would establish a new rule in our Commonwealth which would make all manufacturers of products responsible for any and all legal costs arising in any Pennsylvania litigation involving products liability claims when some other party in the chain of distribution is successful in defending such a claim. Such an enormous change in our law is not supported by applicable precedents nor by well-established doctrines of indemnification.

Moreover, such a reformation of our law would be both unwise and impractical. Our legal and commercial systems have well-developed procedures for dealing with circumstances such as those presented in this case. If a retailer or an intermediate seller of a product becomes a defendant in an action in which it is alleged that a product it sold caused harm to the buyer or others, because of negligence in manufacture or design, the defendant seller is free to

institute joinder proceedings to bring the manufacturer or others in the distribution chain into the litigation as additional defendants.[1] In the alternative, a seller may contract with the manufacturer, or even with others in the distribution chain, to provide for a defense against any such claims, and/or to indemnify and hold the seller harmless from legal costs or any other expenses or liability associated with such litigation.[2] A third alternative, most frequently employed by sellers, is to purchase insurance coverage to provide for the legal defense of all liability claims, and coverage, as needed, for successful claims. Also, it is clear that if a seller is found *liable* to a buyer of the product because of harm caused by a manufacturing defect, the seller may seek restitution from the manufacturer for those expenses properly made in the discharge of the claim. *Sirianni v. Nugent Bros., Inc., supra.* Such mechanisms and practices are integral in the legal and business practices involved in the marketing of products in our country.

We also must recognize that if we were to permit the plaintiff's claim to proceed in this case of first impression, we would create a situation of great uncertainty for manufacturers of products. Without having a role in the conduct of defense efforts, the selection of defense counsel, or even the amount of professional fees to be expended, every manufacturer of a product would be faced with the risk of having to pay for any and all legal expenses arising when any buyer of one of the manufacturer's products alleged an injury and sought a recovery against any other person or entity in the chain of distribution. However, the manufac-

1. The defendant's brief to our court indicates it was brought in to both of the product liability actions as an additional defendant by the plaintiff-appellant Automatic Time and Control Co.

2. The plaintiff's complaint asserted, inter alia, a right to indemnification under a clause in an agreement between the parties. The defendant contended, in its preliminary objections, that the clause only required indemnification as to activities of an entity known as effector, Inc., which was apparently a distributor of the defendant's products. The trial court agreed, and noted that the plaintiff failed to allege any activities by effector, Inc. in its complaint. This aspect of the trial court's ruling is not challenged by the defendant on this appeal.

turer would lack control over defense strategy or settlement decisions which might be made in such cases. Also, the defenses in these actions would often proceed without the benefit of the manufacturer's particular expertise in analyzing claims of defects or failure to discover defects in the manufacture of its own products. Further, manufacturers would frequently be unaware of one or more pending claims, which, if known, might convince them to alter products, to change manufacturing and/or inspection procedures, or to issue vital safety warnings to consumers.

We also cannot ignore obvious conflicts of interest which would arise in some situations. Counsel selected by a defendant seller in a product liability case could be expected to attempt to design a defense and establish evidence which would result in a determination that if any defect existed, it arose from the neglect of the manufacturer of the product, rather than from any fault of the seller. That would create a no-risk situation for the seller. If it prevailed in the litigation, all of its legal expenses would be passed on to the manufacturer. If the injured plaintiff prevailed, the verdict would be likely to be based upon a finding of manufacturer's negligence, thereby entitling the seller to indemnification from the manufacturer for the legal fees and other defense costs expended, as well as for any recovery by the injured plaintiff. In such a situation, there would be no incentive for the seller to consider an appeal of the unfavorable verdict, as appeal proceedings would only delay the seller's recovery of indemnification from the manufacturer. Accordingly, it is clear that even though it would have no control or even a voice in such litigation, the manufacturer would bear all of the risks in the case, including the possibility of paying the seller's attorney for presenting a defense contrary to the manufacturer's interests.

Based upon our determination that the applicable law does not support the plaintiff's claim of a right to indemnification, and also upon our conclusion that there are no factors mitigating in favor of a creation of such a new right of indemnification in the law of our Commonwealth, we hold

that the trial court did not commit error in sustaining the preliminary objections in the nature of a demurrer. The dismissal of the complaint in this case was proper.

The order of the trial court is hereby affirmed.

HUDOCK, J. files a dissenting opinion.

HUDOCK, Judge, dissenting:

I respectfully dissent. As the majority states, ifm Electronics (ifm) is the manufacturer of proximity switches distributed by Automatic Time and Control Co., Inc. (ATC). When ATC was sued in underlying tort actions, ifm was made a party to those actions. ATC requested that ifm indemnify and defend under a theory of common law indemnity and a contract which allegedly provided for the same type of indemnification and defense. ifm refused. ATC was then put in a position where it either defended the actions or risked a default judgment. ATC elected to defend the actions and was successful in having the actions dismissed. At this stage in the present situation, we do not know what the reasons were that those underlying actions were dismissed, but it appears from the record that no finding of a defect was ever reached.

ATC then sought recovery from ifm of the costs it incurred in successfully defending these underlying tort actions. There seems to be little dispute here that had ATC been unsuccessful, and had there been a finding of neglect or product defect, a cause of action would have been stated by ATC under either a common law or contract theory of indemnification. Therefore, the one variation which occurred in the present situation is that ATC was successful in litigating a challenge to the proximity switches involved.

As one of our sister states so aptly put it:

"If the right to costs and attorney's fees for defending the law suit is made contingent on losing on the merits of that action, in every case the indemnitee would be put in the difficult position of attempting to show lack of his own culpability at the same time that he is aiding the

plaintiff's case by attempting to prove the liability of his indemnitor." [*Heritage v. Pioneer Brokerage & Sales, Inc.,* 604 P.2d 1059, 1067 (Alaska 1979)].

Such a result would not inspire confidence in our adversarial judicial system. Another court in following the *Heritage* rationale has stated that a rule that allows recovery of attorney's fees only if the indemnitee loses would "penalize a party for successfully defending the allegation against it". *Pullman Standard, Inc. v. Abex Corp.,* 693 S.W.2d 336, 338 (Tenn.1985). The baseball equivalent would reward a batter for striking out, but cost him dearly if he gets a hit. Just as such a rule would be inimical to the interests of baseball so it also runs counter to the Anglo–American adversary tradition of litigation. These concerns underscore the reasonableness of requiring a manufacturer to pay for those legal costs incurred in the defense of claims for which it would be ultimately liable.

*Booker v. Sears Roebuck & Co.,* 785 P.2d 297, 304 (Okla.1989) (concurring opinion).

The majority is concerned that finding for ATC in the present case would create an enormous change in the law of Pennsylvania and put manufacturers in the position of having to pay for litigation in which it has no role or over which it has no control. I disagree. The cases in this area of indemnification show that often manufacturers are notified of the litigation and given an opportunity to defend and indemnify. *Papas v. Kohler Co., Inc.,* 581 F.Supp. 1272 (M.D.Pa.1984). This is a reasonable requirement and I would also require it. In other cases, the manufacturer has been made a party to the litigation. *Sirianni v. Nugent Bros., Inc.,* 509 Pa. 564, 506 A.2d 868 (1986); *Walton v. Avco Corp.,* 383 Pa.Super. 518, 557 A.2d 372 (1989). In the present situation, ifm was made a party to the underlying tort actions, *and* ATC notified ifm to indemnify and defend. ifm had every opportunity to take over the defense and control the flow of the litigation but it *refused* to do so.

The majority also expresses concern that there are potential conflicts of interest involved in finding for ATC. The majority states:

> Counsel selected by a defendant seller in a product liability case could be expected to attempt to design a defense and establish evidence which would result in a determination that if any defect existed, it arose from the neglect of the manufacturer of the product, rather than from any fault of the seller. That would create a no-risk situation for the seller.

Majority opinion at p. 442.

Again, one of our sister states has solved this problem by requiring that the downstream party, ATC in our case, must present a unified defense and not take a position adverse to the manufacturer. To take an adverse position precludes the downstream party from obtaining indemnity. *Booker v. Sears Roebuck & Co., supra.* This is sound reasoning that I would likewise embrace.

Although the majority would find an enormous change in the law of indemnity in Pennsylvania, I would not find such a far reaching result and would apply this theory to cases similar to this one where the manufacturer has been made a party, notified to defend and indemnify, and still refuses. Clearly, manufacturers are entitled to notice that their product has been called into question either in the form of joinder as a party or a formal notice to defend and indemnify. If the manufacturer refuses to take up the defense at that point, forcing the downstream party to defend, then the manufacturer, who is later released from liability upon a finding of no defect, has received a benefit for which payment should be made to put the downstream member in the position of being held harmless for actions against it by injured third parties. As the Alaska Supreme Court stated:

> [The manufacturer] argues, however, that because [the retailer] successfully contested the [tort plaintiff's] law suit, that no right of indemnity arose and, therefore, [the manufacturer] should not be required to reimburse [the retailer's] expenses in defending the action. We think

that the attempt to draw a distinction along these lines is without merit. In the first place, [the manufacturer] owed [the retailer] a duty to defend the strict products liability suit.... Further, [the manufacturer] could have avoided assessment of attorney's fees by taking over defense of the [tort plaintiff's] claim when it was tendered by [the retailer], but it declined to do so.... Thus, we hold that where indemnification is required, and the indemnitor has been given proper notice of the pending litigation and an adequate opportunity to undertake its duty to defend, the indemnitee is entitled to recover full costs and attorney's fees for the expenses of its successful defense of the action giving rise to the claim for indemnity.

*Heritage, supra* at 1067 (footnotes omitted). I would, therefore, hold that ATC has stated a cause of action and reinstate the complaint.