# Greiner[1] v. Erie Insurance Exchange

1. While plaintiff Brenda L. Foultz has been substituted for Carol Greiner, the original named plaintiff in this action, the parties have not filed a praecipe to change the caption in this matter.

*Dianne M. Nast* and *Joseph F. Roda,* for plaintiff.
*Jeffrey A. Less* and *Paul E. Beck,* for defendant.

HERRON, *J.,* June 26, 2001—Additional defendants TYC Brother Industrial Co. Ltd. and Genera Corporation have filed preliminary objections to the joinder complaint of defendants Erie Insurance Exchange and Erie Insurance Company. In addition, plaintiff Brenda L. Foultz has filed a motion to dismiss the joinder complaint or to sever Erie's claims against the additional defendants from this case. For the reasons set forth in this opinion, the court is ordering discovery on TYC's objection to personal jurisdiction. All other objections are overruled, and the motion to dismiss or sever is denied.

## BACKGROUND

On August 29, 1999, the plaintiff was involved in an automobile accident. At that time, the plaintiff's vehicle was covered by an Erie insurance policy, which states that Erie:

"[W]ill pay the actual cash value for loss to stolen or damaged property, but no more than:

"(1) What it would cost to repair or replace the property with other of like kind and quality; or

"(2) The stated amount that may be shown in the declarations.

"Actual cash value reflects fair market value, age and condition of the property at the time of the loss." Policy at ¶8.

Erie inspected the plaintiff's vehicle and prepared an estimate of repair costs based on the use of at least five parts that were not original equipment manufacturer parts. Ultimately, the repairs were made using the non-OEM parts, which the plaintiff's first amended complaint alleges may be cheaper than, and inferior in quality to, OEM parts and may also be defective. The use of non-OEM parts allegedly is an undisclosed Erie policy that diminishes the value of the vehicle while failing to restore the insured vehicle to its pre-loss condition and fair market value.

The plaintiff brought a class action suit against Erie based on its alleged breach of the policy, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law[2] and bad faith.[3] In response to Erie's preliminary objections, the court struck the plaintiff's demands for a jury trial but allowed her to proceed on her causes of action.

Erie subsequently joined Genera and TYC, the manufacturers of the non-OEM parts used to repair the

---

2. 73 Pa.C.S. §§201-1—201-9.3.

3. Originally, the plaintiff also demanded a declaration of rights and permanent injunction ordering Erie to abide by the terms of its contracts, but this claim has since been dismissed.

plaintiff's vehicle, as additional defendants.[4] According to the joinder complaint, the additional defendants represented that their parts were as good as OEM parts and that they were not defective, inferior or substandard. As a result, Erie contends, they are solely liable to the plaintiff, jointly and severally liable with Erie or liable over to Erie on the plaintiff's claims.

In response to the joinder complaint, the additional defendants have filed the objections, in which they assert that they have been improperly joined. TYC has also asserted that the court does not have personal jurisdiction over it. In addition, the plaintiff has filed a motion to dismiss or sever, asking that the joinder complaint be dismissed or that Erie's claims against the additional defendants be severed from the class action suit.

## DISCUSSION

Because there are outstanding factual issues as to whether the court has personal jurisdiction over TYC, the court is ordering TYC and Erie to take depositions as to those issues and to file additional briefs. The joinder complaint's allegations support joining the additional defendants, and the plaintiff has failed to establish that allowing the joinder complaint claims to proceed in tandem with the class action will be inconvenient or cause her prejudice. As such, the motion to dismiss or sever is denied, and the remaining objections are overruled.

---

4. Erie also joined Wheels to the World, LLC and Smeals Inc., although both have since been dismissed from the instant action.

## I. *Erie's Joinder of the Additional Defendants Is Valid*

Pennsylvania Rule of Civil Procedure 1706.1 sets forth the conditions under which an additional defendant may be joined in a class action:

"Any defendant or additional defendant may only join as an additional defendant any person, whether or not a party to the action, who may be

"(1) solely liable on the plaintiff's cause of action; or

"(2) liable over to the joining party on the plaintiff's cause of action, or

"(3) jointly or severally liable with the joining party on the plaintiff's cause of action." Pa.R.C.P. 1706.1.

No Pennsylvania appellate court decisions address Rule 1706.1. However, as stated in the note accompanying Rule 1706.1, "[t]he three bases of joinder provided by this rule are identical to the bases of joinder provided by Pa.R.C.P. 2252(a)(1) through (3) governing the joinder of additional defendants generally." [5] Accordingly, the court will look to cases addressing Rule 2252(a)(1), (2) and (3) for guidance.[6]

---

5. Pa.R.C.P. 2252 will be referred to as "Rule 2252."

6. It is unclear whether Pennsylvania law allows a plaintiff to oppose a defendant's joinder complaint, even in the form of a motion to dismiss. See Rule 2255(b)(1) (limiting pleadings between additional defendants and the joining party); *Martinelli v. Mulloy,* 223 Pa. Super. 130, 136, 299 A.2d 19, 21-22 (1972) ("[t]he rules were not intended to enable a plaintiff who has no control over litigation between the defendant and the additional defendant, to effectively prevent an adjudication of their rights"). See also, *Somers v. Gross,* 393 Pa. Super. 509, 512 n.2, 574 A.2d 1056, 1057 n.2 (1990) (noting that "the proper challenge to joinder is by way of preliminary objection to the joinder complaint"). Because the plaintiff's substantive arguments against the join-

## A. The Complaint and the Joinder Complaint Are Based on the Same Cause of Action

When a party seeks to join a defendant on the basis of Rule 2252(a)(1), (2) or (3), "the only substantive limitation placed upon the right to join an additional defendant on any of these grounds is that liability must be premised upon the same cause of action alleged by the plaintiff in his or her complaint." *Gordon v. Sokolow,* 434 Pa. Super. 208, 214, 642 A.2d 1096, 1099 (1994) (quoting *Svetz for Svetz v. Land Tool Co.,* 355 Pa. Super. 230, 235, 513 A.2d 403, 405-406 (1986), *alloc. denied,* 515 Pa. 584, 527 A.2d 544 (1987). (quotation marks removed) Pennsylvania courts have defined "cause of action" broadly:

"'Cause of action' has been defined as

"[t]he fact or facts which give a person a right to judicial relief. The legal effect of an occurrence. A situation or state of facts which would entitle party to sustain action and give him right to seek a judicial remedy in his behalf.

"Black's Law Dictionary (5th ed. 1979). The words 'cause of action' as used in the rule must be construed 'to mean "damages or injuries." ' *Staub v. Southwest Butler County School District,* 263 Pa. Super. 413, 421, 398 A.2d 204, 207 (1979), *aff'd,* 489 Pa. 196, 413 A.2d 1082 (1980). See 8 Goodrich-Amram 2d §2252(a):6." *Svetz,*

---

der complaint are encompassed within those raised by the additional defendants, however, the court will address them in that posture and avoid entangling itself in the sticky question of the plaintiff's right to concern itself with the joinder complaint.

355 Pa. Super. at 235, 513 A.2d at 406.[7] See also, *Incollingo v. Ewing,* 444 Pa. 263, 290, 282 A.2d 206, 221 (1971) (the term "cause of action" "may not be taken too literally. So long as the additional defendant's alleged liability is related to the original claim which plaintiff asserts against the original defendant, the third party complaint is within bounds."); *Hileman v. Morelli,* 413 Pa. Super. 316, 332, 605 A.2d 377, 385 (1992) ("the plaintiffs' cause of action is to be defined as the harm of which the plaintiff complains").

In the instant matter, the plaintiff's cause of action, as the term is used in Rule 2252, includes the following injuries:

"Diminished vehicle value;

---

7. This comports with the general policy of interpreting Rule 2252 broadly:

"Generally applicable to all the rules of civil procedure is Rule 126 which provides that '[t]he rules shall be liberally constructed [sic] to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable.' Such an approach is particularly pertinent where multiple parties are involved since in such cases the primary intent of the rules is to avoid multiplicity of suits by providing for the adjudication of all the rights and liabilities of those present and concerned in a single suit. *Martinelli v. Mulloy,* 223 Pa. Super. 130, 299 A.2d 19 (1972). This court has favored the policy of broadly interpreting Rule 2252 'not only to compel every interested person to defend the action by the plaintiff, but also to save the original defendant from possible harm resulting from loss of evidence as might result if compelled to await the end of the suit before proceeding against those from whom he seeks contribution.' *Martinelli v. Mulloy, supra,* 223 Pa. Super. at 135, 299 A.2d [at] 21.

"*Ragan v. Steen,* 229 Pa. Super. 515, 525-26, 331 A.2d 724, 730 (1974)." *Svetz,* 355 Pa. Super. at 235-36, 513 A.2d at 406. See also, *Snoparsky v. Baer,* 439 Pa. 140, 145, 266 A.2d 707, 710 (1970) (noting that Rule 2252 is "designed to avoid an unnecessary multiplicity of suits").

"Reduced effectiveness of the manufacturer's vehicle warranty;

"Impairment of the vehicle's structural integrity;

"Detrimental effects on the vehicle's performance;

"Reduction in the vehicle's resale value; and

"Failure to restore the vehicle to its pre-loss condition and fair market value." Complaint at ¶15.

According to the joinder complaint, these injuries are attributable to the additional defendants' misconduct. Joinder complaint at ¶¶15, 21. This supports Erie's argument that its claims against the additional defendants arise from the plaintiff's cause of action.

The additional defendants rely heavily on *Gordon,* in which the plaintiffs' claim against their former attorneys for legal malpractice arose from the attorneys' alleged negligence in failing to alert the plaintiff to a specific contract provision that operated to the plaintiff's detriment. The attorneys attempted to join the seller in the original transaction, alleging that the seller had fraudulently inserted the harmful language and failed to notify the plaintiffs or their attorneys that it had been inserted. The Pennsylvania Superior Court concluded that these claims did not arise from the same cause of action:

"The plaintiffs in the original complaint commenced the action against appellants for legal malpractice. The appellant attorneys in turn allege in their complaint to join additional defendants that Empire and William Nolan committed fraud or intentionally and/or negligently misrepresented the contents of the agreement of sale to plaintiffs. The plaintiffs' action alleged failure to provide proper legal advice; whereas the joinder complaint alleged failure to disclose changes in the contract. The

claims raised in the joinder complaint are separate from the plaintiffs' cause of action against the attorneys for professional negligence." *Gordon,* 434 Pa. Super. at 215, 642 A.2d at 1100.

The instant case is distinguishable from *Gordon.* In *Gordon,* the central question in the original complaint was the attorneys' inaction in violation of their responsibilities to their clients, while the primary issue in the joinder complaint was the insertion of language into the relevant contract. Here, in contrast, both the complaint and the joinder complaint focus on the same issue: the quality of the non-OEM parts used in repairing the plaintiff's vehicle and the harm to the plaintiff as a result of their use. Cf. *Moscatiello v. Pittsburgh Contractors Equipment Co.,* 407 Pa. Super. 378, 389, 595 A.2d 1198, 1203 (1991) (allowing joinder and stating that it was of "no consequence" that the original complaint and the joinder complaint were based on two different contracts). As a result, the plaintiff's claims against Erie and Erie's claims against the additional defendants arise from the same cause of action.

### B. The Joinder Complaint Alleges Complete Claims for Sole Liability, Indemnification and Contribution Against the Additional Defendants

Because the additional defendants' alleged liability is attributed to the plaintiff's cause of action, the joinder complaint is permitted if it alleges one of the following:

(1) The additional defendants are solely liable;

(2) The additional defendants are liable over to Erie through indemnification; or

(3) The additional defendants are jointly or severally liable with Erie through joint tort-feasor contribution.

The joinder complaint alleges facts to support the additional defendants' liability on each of these bases.

### 1. *Sole liability*

Under Rule 2252(a)(1), a party may be joined as an additional defendant if it is solely liable on the plaintiff's cause of action. Erie alleges that the additional defendants may be solely liable to the plaintiff because of their breach of implied warranties, UTPCPL violations or manufacture and/or distribution of a defective product.[8]

Under the Uniform Commercial Code, as adopted by Pennsylvania, a contract may include an implied warranty of merchantability and an implied warranty that the goods are fit for a particular purpose:

"The implied warranty of merchantability, as set forth in the UCC, is 'a warranty that the goods will pass without objection in the trade and are fit for the ordinary purposes for which such goods are used.' *Moscatiello v. Pittsburgh Contractors Equipment Company,* 407 Pa. Super. 363, 368, 595 A.2d 1190, 1193 (1991), citing 13 Pa.C.S. §2314, *appeal denied,* 529 Pa. 650, 602 A.2d 860 (1992). Such a warranty 'serves to protect buyers from loss where the goods purchased are below commercial standards.' *Hornberger v. General Motors Corporation,* 929 F. Supp. 884 (E.D. Pa. 1996). The Superior Court has observed that 'this warranty is so commonly taken for granted that its exclusion from a contract is recognized as a matter threatening surprise and therefore requiring special precaution.' *Moscatiello,* 407 Pa. Super. at [368-69], 595

---

8. Although Erie's claim that the additional defendants are solely liable is based on legal theories different from those proposed by the plaintiff, this is of no import. As noted *supra,* the broad definition of "cause of action" allows the joining party to proceed on causes of action distinct from those in the original complaint.

A.2d at 1193, citing comment 11 to 13 Pa.C.S. §2314. The implied warranty that goods shall be fit for a particular purpose exists, under the UCC, where the seller at the time of contracting has reason to know of such purpose and of the buyer's reliance upon the seller's skill or judgment to select or furnish goods that are suitable for such purpose. See 13 Pa.C.S. §2315." *Borden Inc. v. Advent Ink Co.,* 701 A.2d 255, 258 (Pa. Super. 1997).

Claims for breaches of each of these warranties, whether for property or economic damage, may be asserted by the ultimate consumer against the product's manufacturer or distributor. *Spagnol Enterprises Inc. v. Digital Equipment Corp.,* 390 Pa. Super. 372, 568 A.2d 948 (1989). See also, *Moscatiello,* 407 Pa. Super. at 389-90, 595 A.2d at 1203-1204 (allowing joinder of manufacturer based on potential sole and direct liability for breach of implied warranties).

By supplying inferior, defective and substandard parts, Erie contends, the additional defendants' actions violated the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. Joinder complaint at ¶¶9-10, 13, 17. If this is correct, the additional defendants could be held solely liable to the plaintiff on her cause of action, and the objections to the sole liability count in the joinder complaint must be overruled.[9]

## 2. *Indemnification*

Indemnity is a common-law remedy that "shifts the entire loss from one defendant to another." *Burch v. Sears,*

9. Because the joinder complaint alleges facts to support sole liability based on breach of implied warranties, the court need not consider whether the additional defendants may be solely liable for violations of the UTPCPL and products liability laws.

*Roebuck and Co.,* 320 Pa. Super. 444, 456, 467 A.2d 615, 622 (1983). The right to indemnification arises "only when a person or entity secondarily liable has been compelled, by reason of some legal obligation, *to pay damages* occasioned by the *negligence* of the party which should be primarily liable." *Automatic Time and Control Co. Inc. v. ifm Electronics, GmBh,* 410 Pa. Super. 437, 439, 600 A.2d 220, 222 (1991) (noting further that " '[p]rimary' liability can only rest upon a *fault* by the person or entity primarily responsible for a *defect or a dangerous condition* in the product"). (emphasis in original)[10] Specifically, Pennsylvania courts have applied the "mere conduit" theory to hold that a seller is entitled to indemnification from the manufacturer of a defective product for economic losses resulting from a breach of contract. *Moscatiello v. Pittsburgh Contractors Equipment Co.,* 407 Pa. Super. 378, 595 A.2d 1198 (1991).[11]

---

10. The determination of degrees of liability rests on the following:

"To evaluate primary as against secondary liability courts have focused on factors such as active or passive negligence and knowledge of or opportunity to discover or prevent the harm. . . .

"The Restatement of Restitution also addresses indemnity in a chain of distribution case:

"Where a person has supplied to another a chattel which because of the supplier's negligence or other fault is dangerously defective for the use for which it is supplied and both have become liable in that to a third person injured by such use, the supplier is under a duty to indemnify the other for expenditures properly made in discharge of the claim of the third person, if the other used or disposed of the chattel in reliance upon the supplier's case and if, as between the two, such a reliance was justifiable." *Moran v. G. & W.H. Corson Inc.,* 402 Pa. Super. 101, 124, 586 A.2d 416, 427-28 (1991).

11. While it is not clear from Pennsylvania law that Erie would qualify as a "seller," the joinder complaint allows the inference that Erie may have been a conduit through whom the non-OEM parts in question passed. At the least, the allegations in the joinder complaint

According to the complaint, the additional defendants manufactured or distributed the non-OEM parts that were used in repairing the plaintiff's vehicle and represented that these parts "were as good as OEM parts, and that they were not defective, inferior or substandard." Joinder complaint at ¶¶9, 10, 13. In addition, Erie incorporates the plaintiff's allegation that the parts used in repairing her vehicle were "defective, inferior and substandard." *Id.* at ¶15. On this basis, the court concludes that Erie may be entitled to indemnification from the additional defendants on the plaintiff's cause of action.

### 3. *Contribution for joint and several liability*

In Pennsylvania, contribution based on joint and several liability is governed by statute and is available only among joint tort-feasors. *Kemper National P & C Cos. v. Smith,* 419 Pa. Super. 295, 309, 615 A.2d 372, 380 (1992). The term "joint tort-feasors" is defined as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa.C.S. §8322.[12] In the objections, the additional de-

---

support the conclusion that the additional defendants had a greater "opportunity to discover or prevent the harm" that befell the plaintiff and thus may be primarily liable.

12. In determining whether parties are joint tort-feasors, courts generally consider the following factors: "the identity of a cause of action against each of two or more defendants; the existence of a common, or like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place or result; whether the injury is direct and immediate, rather than consequential, responsibility of the defendants for the same *injuria* as distinguished from *damnum*." *Harka v.*

fendants argue that, because they are not liable in tort on the plaintiff's claims, they cannot be joint tort-feasors and Erie's claim for contribution must be dismissed. As noted *supra,* the additional defendants may be liable for breach of implied warranty. While there is no Pennsylvania appellate decision on whether a claim for breach of implied warranty sounds in tort, at least one Pennsylvania common pleas court judge has addressed this issue. After recognizing that a claim for contribution must be based on a tort, the court in *Woolf v. Dinbokowitz Marine Inc.,* 22 D.&C.4th 545 (Lehigh Cty. 1993), held that a claim for breach of implied warranty was an action in tort on which a claim for contribution could be premised:

"We first note that the Pennsylvania Superior Court, in *Salvador v. Atlantic Steel Boiler Co.,* 224 Pa. Super. 377, 386, 307 A.2d 398, 403 (1973), *affirmed,* 457 Pa. 24, 319 A.2d 903 (1974), cited a learned treatise of Dean Prosser as follows:

"The action for breach of warranty was originally one . . . sounding in tort and closely allied to deceit; and it was not until 1778 that the contract action was held to lie at all . . . The conclusion from all this is obvious. If warranty is a matter of tort as well as contract, and if it can arise without any intent to make it a matter of contract, then it should need no contract; and it may arise and exist between parties who have not dealt with one

*Nabati,* 337 Pa. Super. 617, 622, 487 A.2d 432, 434 (1985). See also, *Lasprogata v. Qualls,* 263 Pa. Super. 174, 179 n.4, 397 A.2d 803, 805 n.4 (1979) (quoting Black's Law Dictionary, 4th ed., for the position that, "to be a joint tort-feasor, 'the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury' ").

another. This was the same reasoning applied in *Debbis v. Hertz Corp.,* 269 F. Supp. 671 (D. Md. 1967), wherein the court stated: While breach of an implied warranty is basically a contract rather than a tort action, it, nevertheless, has roots which spring essentially from a tort background. . . .

"The Superior Court in *Svetz* [*v. Land Tool Company,* 355 Pa. Super. 230, 513 A.2d 403 (1986)], also cited with approval the case of *Wolfe v. Ford Motor Company,* 386 Mass. 95, 434 N.E.2d 1008 (1982), which held that a statute granting the right of contribution among joint tortfeasors should be read to include tort-like liability for breach of implied warranty of merchantability. The Massachusetts Supreme Court held that the term 'liable in tort' as used in their contribution statute, a statute similar to Pennsylvania's, 'is broad in scope and not suitable language for implying a narrow or restricted range of application within the framework of potential tort defendants.'

"The court of Special Appeals of Maryland has also spoken to this issue. Citing Dean Prosser's colorful language that a claim under implied warranty is 'a freak hybrid born of the illicit intercourse of tort and contract,' this court held that such claim is a 'claim in tort' under the Uniform Contribution Among Tort-Feasors Act. *Loh v. Safeway Stores Inc.,* 47 Md. App. 110, 422 A.2d 16 (1980). We agree with the reasoning of these appellate courts and the commentary of Dean Prosser, therefore concluding that a claim for contribution may be made under breach of implied warranty theory." 22 Pa. D.&C.4th at 547-50. (footnote omitted)

In addition to the courts in the opinions cited in this excerpt, other courts are in accord with the position taken

in *Woolf.* See *e.g., In re Jones,* 804 F.2d 1133, 1141-42 (10th Cir. 1986) (a defendant liable for breach of implied warranty is liable in tort for purposes of contribution); *Western Tankers Corp. v. United States,* 387 F. Supp. 487, 491 (S.D.N.Y. 1975) (allowing claim for contribution based on breach of implied warranty under maritime personal injury law); *State University Constr. Fund v. United Tech. Corp.,* 432 N.Y.S.2d 653, 654 (N.Y. App. Div. 1980) (breach of warranty claim allows corresponding claim for contribution). See also, 18 Am. Jur. 2d Contribution §46 ("[i]t is generally agreed that for the purposes of the Uniform Contribution Among Tort-Feasors Act, a suit for the breach of an implied warranty can be a 'claim in tort' allowing a plaintiff to claim the role of an injured person under the Act").

Although the court's decision in *Woolf* is not binding, its logic and reasoning, along with the numerous cases in agreement with its conclusions, are persuasive and convince the court that an action for breach of warranty may be considered an action in tort for the purposes of contribution. Thus, Erie's claim for contribution against the additional defendants is proper, and the substantive objections must be overruled.[13]

---

13. The additional defendants' arguments regarding the specifics of the plaintiff's claims must also be rejected. First, it is clear that the plaintiff's allegations are based, at least in part, on the use of non-OEM headlamp lenses and housing. Complaint at ¶10. In addition, a court examining preliminary objections to a class action complaint, and, presumably, preliminary objections to a joinder complaint prior to certification, should concern itself with the allegations and claims of the individual plaintiffs only. *Sherrer v. Lamb,* 319 Pa. Super. 290, 294, 466 A.2d 163, 165 (1983). See also, *Janicik v. Prudential Insurance Co. of America,* 305 Pa. Super. 120, 128, 451 A.2d 451, 454 (1982) ("[a] court may not make the initial class action determination until

## II. *TYC's Objection To Personal Jurisdiction Requires Additional Factual Development Before It Can Be Resolved*

TYC also claims that the court does not have personal jurisdiction over it. Erie counters that the court's exercise of personal jurisdiction over TYC comports with the constraints imposed by the United States Constitution and Pennsylvania statute. Because this objection raises questions of fact, additional information is required before a determination is possible. As a result, the court is ordering Erie and TYC to take depositions and to file briefs on this issue, as outlined in the order.

In evaluating an objection to personal jurisdiction, the objecting party initially bears the burden of proof. *Barr v. Barr,* 749 A.2d 992, 994 (Pa. Super. 2000); *Grimes v. Wetzler,* 749 A.2d 535, 538 (Pa. Super. 2000); *King v. Detroit Tool Co.,* 452 Pa. Super. 334, 339, 682 A.2d 313, 315 (1996) (the objecting party must "meet its burden of showing jurisdictional infirmities that are 'clear and free from doubt' "). However, "[o]nce the moving party supports its objections to personal jurisdiction, the burden of proving personal jurisdiction is upon the party asserting it." *Barr,* 749 A.2d at 994. See also, *Grimes,* 749 A.2d at 538 ("[o]nce the movant has supported its jurisdictional objection, . . . the burden shifts to the party asserting jurisdiction to prove that there is statutory and constitutional support for the court's exercise of in personam jurisdiction").

---

after the close of pleadings to ensure that the class proponent is presenting a non-frivolous claim capable of surviving preliminary objections"). As such, the court is hesitant to look beyond the plaintiff's cause of action to class issues at this stage.

In order for a Pennsylvania court to exercise jurisdiction over a non-resident defendant, (1) the Commonwealth's long-arm statute[14] must authorize jurisdiction and (2) the exercise of jurisdiction must satisfy constitutional principles of due process. *Graham v. Machinery Distribution Inc.,* 410 Pa. Super. 267, 269-70, 599 A.2d 984, 985-86 (1991). Because the long-arm statute allows for personal jurisdiction "to the fullest extent allowed under the Constitution of the United States," any discussion of personal jurisdiction must focus on consitutional due process constraints. *Temtex Products Inc. v. Kramer,* 330 Pa. Super. 183, 194, 479 A.2d 500, 505-506 (1984).

Under the United States Constitution, a court "may exercise two types of personal jurisdiction over out-of-state defendants, (1) specific jurisdiction . . ., based upon the specific acts of the defendant which gave rise to the cause of action, and (2) general personal jurisdiction . . ., based upon a defendant's general activity within the state." *McCall v. Formu-3 International Inc.,* 437 Pa. Super. 575, 578, 650 A.2d 903, 904 (1994). (citations omitted)

For a court to exercise specific jurisdiction, "(1) the non-resident defendant must have sufficient *minimum contacts* with the forum state and (2) the assertion of in personam jurisdiction must comport with *fair play and substantial justice.* . . . The determination of whether this standard has been met is not susceptible of any talismanic jurisdictional formula: the facts of each case must always be weighed in determining whether jurisdiction is proper." *Kubik v. Letteri,* 532 Pa. 10, 17, 614 A.2d 1110, 1114 (1992) (citing *Burger King Corp. v. Rudze-*

---

14. 42 Pa.C.S. §§5321-5329.

*wicz,* 471 U.S. 462, 485-86, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528, 549 (1985)). (emphasis added)

The minimum contacts requirement is not satisfied by contacts "that are 'random,' 'fortuitous' or 'attenuated' " or by "unilateral activity in the forum by others who claim some relationship with the defendant." *Id.,* 532 Pa. at 18, 614 A.2d at 1114 (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542). Rather, it must be shown that the "defendant's conduct and [its] connection with the forum state are such that [it] should reasonably anticipate being haled into court there." *Id.,* 532 Pa. at 17, 614 A.2d at 1114 (quoting *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 542). This requires that a court make "the determination that the defendant purposefully directed [its] activities at residents of the forum and purposefully availed [itself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Id.,* 532 Pa. at 18, 614 A.2d at 1114. In addition, "the cause of action must arise from defendant's activities within the forum state." *Id.,* 532 Pa. at 19, 614 A.2d at 1115.

A court's exercise of specific jurisdiction must also conform to notions of fair play and substantial justice. In reviewing whether an exercise of jurisdiction meets this requirement, a court should consider: "(1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies and (5) the shared interest of the several states in furthering fundamental

substantive social policies." *Id.,* 532 Pa. at 18, 614 A.2d at 1114 (citing *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 543).

Even where specific jurisdiction is not proper, "Pennsylvania courts may still be able to exercise general personal jurisdiction if the defendant has carried on a continuous and systematic part of its general business within the Commonwealth." *McCall,* 437 Pa. Super. at 578-79, 650 A.2d at 904. Such jurisdiction is valid "regardless of whether the cause of action is related to the defendant's activities in Pennsylvania, as long as the [corporate] defendant's activities in this Commonwealth are 'continuous and substantial.' " *Garzone v. Kelly,* 406 Pa. Super. 176, 183, 593 A.2d 1292, 1296 (1991).

The documents submitted by TYC and Erie contain conflicting factual assertions as to TYC's activities in Pennsylvania. Erie, on the one hand, contends that TYC has established a distribution system in Pennsylvania and has had "pervasive control over additional defendant Genera, such that they are not independent of one another." Erie's memorandum at 11. TYC, in contrast, has set forth a list of conduct it has *not* undertaken in Pennsylvania. TYC's memorandum at 11.

Factual disputes, such as these, are to be resolved through interrogatories, depositions or an evidentiary hearing. *American Housing Trust III v. Jones,* 548 Pa. 311, 319-20, 696 A.2d 1181, 1185 (1997); *Luitweiler v. Northchester Corp.,* 456 Pa. 530, 535, 319 A.2d 899, 902-903 (1974). See also, *Scoggins v. Scoggins,* 382 Pa. Super. 507, 514, 555 A.2d 1314, 1318 (1989) (if there are disputed material facts "as to the scope of a defendant's activities within the Commonwealth, the

plaintiff has the right to depose defendant as to his activities within the Commonwealth, and the court must permit the taking of the deposition before ruling on the preliminary objections").[15] While affidavits may be used if the facts are clear and specific, "[t]his is not a recommended procedure," and it is "preferable to proceed by depositions or written interrogatories." *Slota v. Moorings Ltd.,* 343 Pa. Super. 96, 100, 494 A.2d 1, 2 (1985). See also, *Ambrose v. Cross Creek Condominiums,* 412 Pa. Super. 1, 13-14, 602 A.2d 864, 869 (1992) (recognizing that resolving objections to personal jurisdiction by the "[s]ubmission of evidence by affidavit is not a recommended procedure" and requiring a trial court to resolve a factual dispute "through interrogatories, depositions or an evidentiary hearing").

Here, Erie has specifically requested that it be allowed to take depositions as to TYC's activities in Pennsylvania. Erie's memorandum at 19. Accordingly, the court is ordering that Erie and TYC take depositions regarding those acts that would allow the court to exercise personal jurisdiction over TYC. These depositions are to be completed within 45 days of the issuance of this opinion and in accordance with Pa.R.C.P. 4007.1. Once this has been accomplished and within 60 days of the issuance of this opinion, the parties are to file briefs addressing the issue of personal jurisdiction and referencing the

---

15. When trial courts have failed to follow this rule, appellate courts have been unrestrained in expressing their displeasure. See *Delaware Valley Underwriting Agency Inc. v. Williams & Sapp Inc.,* 359 Pa. Super. 368, 518 A.2d 1280 (1986) (remanding the case to the lower court with instructions to follow the "current version" of the law); *Luria v. Luria,* 220 Pa. Super. 168, 170, 286 A.2d 922, 923 (1971) (reprimanding the lower court for making factual determinations without ordering the taking of depositions or the filing of interrogatories or both).

depositions and any other relevant evidence. In the interim, TYC's objections to personal jurisdiction will be held under advisement.

### III. *The Court May Not Grant the Plaintiff's Motion To Sever*

As a secondary argument, the plaintiff has requested that the claims against the additional defendants be severed from the plaintiff's class action claim. The court cannot grant the plaintiff's motion to sever at this time.

Pa.R.C.P. 213(b) permits a court to sever a party's claims:

"The court, in furtherance of convenience or to avoid prejudice, may, on its own motion or on motion of any party, order a separate trial of any cause of action, claim, or counterclaim, setoff, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, setoffs, cross-suits, or issues." Pa.R.C.P. 213(b).

Application of Rule 213(b) is "strongly encouraged where separation of issues facilitates the orderly presentation of evidence and judicial economy." *Pascale v. Hechinger Co. of Pa.,* 426 Pa. Super. 426, 438, 627 A.2d 750, 756 (1993).

While the plaintiff cogently, if not convincingly, argues against the propriety of joining the additional defendants in this matter, the portion of her motion urging the severance of Erie's claims comes almost as an afterthought and does not address convenience or prejudice in any substantial manner. Erie's response, in contrast, sets forth a litany of harms it would suffer if the plaintiff's motion to sever were granted. Erie's response to plaintiff's motion at 27-30. Accordingly, the court can-

not grant the plaintiff's motion to sever based on the information currently before it. Cf. *Didio v. Philadelphia Asbestos Corp.*, 434 Pa. Super. 191, 203, 642 A.2d 1088, 1094 (1994) (affirming severance of defendant's cross-claims where they "were most likely a delay tactic which would only serve to unduly prolong [plaintiff's] action").

## CONCLUSION

The joinder complaint is proper, and the plaintiff's motion to sever must be denied. TYC's objections to personal jurisdiction require additional facts before they can be resolved and will be held under advisement while TYC and Erie engage in discovery.

## ORDER

And now, June 26, 2001, upon consideration of the preliminary objections of additional defendants TYC Brother Industrial Co. Ltd. and Genera Corporation to the joinder complaint of defendants Erie Insurance Exchange and Erie Insurance Company, plaintiff Brenda L. Foultz' motion to dismiss or sever and the defendants' responses thereto and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed as follows:

(1) TYC Brother Industrial Co. Ltd.'s preliminary objections asserting lack of personal jurisdiction will be held under advisement for 60 days, so that within 45 days, depositions pursuant to Pa.R.C.P. 4007.1 may be taken to resolve the factual questions regarding personal jurisdiction over TYC Brother Industrial Co. Ltd.;

(2) After the 45th day but on or before the 60th day, TYC Brother Industrial Co. Ltd. and the defendants shall

file with this court, briefs offering any further argument and referencing the depositions or other relevant evidence on the issue of personal jurisdiction over TYC Brother Industrial Co. Ltd.;

(3) The remaining preliminary objections are over-ruled;

(4) The motion to dismiss or sever is denied; and

(5) Genera Corporation is directed to file an answer to the joinder complaint within 20 days of this order.